# EXHIBIT B

| DATED: 21.03.2015 | DATUM: 21.03.2015. |
|---|---|
| | „ŽELEZARA SMEDEREVO" D.O.O. SMEDEREVO Broj: 116 Datum: 21.03.2015. (10) |
| **(1) THE REPUBLIC OF SERBIA** | **(1) REPUBLIKA SRBIJA** |
| - and - | - i - |
| **(2) ŽELEZARA SMEDEREVO DOO** | **(2) ŽELEZARA SMEDEREVO DOO** |
| - and - | - i- |
| **(3) HPK MANAGEMENT D.O.O.** | **(3) HPK MANAGEMENT D.O.O.** |
| - and - | - i - |
| **(4) HPK ENGINEERING B.V.** | **(4) HPK ENGINEERING B.V.** |
| # MANAGEMENT AND CONSULTANCY SERVICES AGREEMENT | # UGOVOR O PRUŽANJU USLUGA UPRAVLJANJA I SAVETOVANJA |

## TABLE OF CONTENTS / SADRŽAJ

| | | |
|---|---|---|
| 1 | DEFINITIONS AND INTERPRETATION | 4 |
| 1. | *DEFINICIJE I TUMAČENJE ODREDBI* | *4* |
| 2 | SIGNING AND CLOSING OF THIS AGREEMENT | 16 |
| 2. | *POTPISIVANJE I STUPANJE NA SNAGU OVOG UGOVORA* | *16* |
| 3 | MANAGEMENT OF THE COMPANY | 19 |
| 3. | *UPRAVLJANJE DRUŠTVOM* | *19* |
| 4 | SYNERGIES AND RELATED PARTY ARRANGEMENTS | 33 |
| 4. | *ZAJEDNIČKO DELOVANJE I POSLOVI SA POVEZANIM LICIMA* | *33* |
| 5 | PAYMENTS | 35 |
| 5. | *PLAĆANJA* | *35* |
| 6 | WARRANTIES AND COVENANTS | 36 |
| 6. | *IZJAVE I GARANCIJE* | *36* |
| 7 | TERM | 39 |
| 7. | *VREME TRAJANJA UGOVORA* | *39* |
| 8 | TERMINATION | 40 |
| 8. | *RASKID UGOVORA* | *40* |
| 9 | VIS MAJOR | 42 |
| 9. | *VIŠA SILA* | *42* |
| 10 | LIMITATION OF LIABILITY | 42 |
| 10. | *OGRANIČENJE OD ODGOVORNOSTI* | *42* |
| 11 | NON-COMPETITION | 43 |
| 11. | *ZABRANA KONKURENCIJE* | *43* |
| 12 | ANNOUNCEMENTS | 44 |
| 12. | *OBJAVE* | *44* |
| 13 | CONFIDENTIALITY | 45 |
| 13. | *POVERLJIVOST* | *45* |
| 14 | NOTICES AND OTHER COMMUNICATIONS | 46 |
| 14. | *OBAVEŠTENJA I OSTALE PREPISKE* | *46* |
| 15 | MISCELLANEOUS MATTERS | 49 |
| 15. | *PRELAZNE I ZAVRŠNE ODREDBE* | *49* |
| 16 | DISPUTE RESOLUTION | 51 |
| 16. | *REŠAVANJE SPOROVA* | *51* |
| 17 | CHOICE OF LAW AND JURISDICTION | 52 |
| 17. | *MERODAVNO PRAVO I NADLEŽNOST SUDA* | *52* |
| **LIST OF SCHEDULES/ SPISAK PRILOGA** | | **54** |



THIS MANAGEMENT AND CONSULTANCY SERVICES AGREEMENT (the **Agreement**) is made on **21 March 2015** BETWEEN:

(1) **THE REPUBLIC OF SERBIA,** represented by the Ministry of Economy of the Republic of Serbia (the **Ministry**) with its offices at Nemanjina Street, no. 11, 11000 Belgrade, the Republic of Serbia, herein represented by Minister of Economy Mr. Željko Sertić pursuant to Conclusion of the Government of the Republic of Serbia 05 No: 023-3113/2015, dated 19 March 2015 (the **RoS**);

and

(2) **PRIVREDNO DRUŠTVO ZA PROIZVODNJU I PRERADU ČELIKA ŽELEZARA SMEDEREVO DOO SMEDEREVO,** a limited liability company established and existing under the laws of the Republic of Serbia, whose registered office is at Radinac, Smederevo, the Republic of Serbia, registered with Serbian Business Registrar Agency on 25 August 2003, under the registration number 07342691, herein represented by Mr. Bojan Bojković per Power of Attorney dated 19 March 2015 (the **Company**);

and

(3) **HPK MANAGEMENT D.O.O. BEOGRAD,** a limited liability company organized and existing under the laws of Republic of Serbia, whose registered office is at Bul. Dr Zorana Đinđića 64a, Belgrade, registered with the Serbian Business Registrar Agency on 18 March 2015 under registration number 21091600, herein represented by Mr. Peter Kamaras in his capacity as authorized representative (the **Service Provider**); and

(4) **HPK ENGINEERING B.V.,** a private company with limited liability organized and existing under the laws of the Netherlands, whose registered office is at Luna ArenA, Herikerbergweg 238, 1101 CM

---

UGOVOR O PRUŽANJU USLUGA UPRAVLJANJA I SAVETOVANJA (**Ugovor**) je zaključen dana **21. marta 2015. godine** IZMEĐU:

(1) **REPUBLIKE SRBIJE,** koju zastupa Ministarstvo privrede Republike Srbije (**Ministarstvo**) sa sedištem u Nemanjinoj 11, 11000 Beograd, Republika Srbija, koje zastupa ministar ekonomije g. Željko Sertić shodno Zaključku Vlade Republike Srbije 05 Broj: 023-3113/2015, od 19.03.2015. godine (**RS**);

i

(2) **PRIVREDNOG DRUŠTVA ZA PROIZVODNJU I PRERADU ČELIKA ŽELEZARA SMEDEREVO DOO SMEDEREVO,** društvo sa ograničenom odgovornošću, osnovano po zakonima Republike Srbije, sa sedištem u Radincu, 11300 Smederevo, Republika Srbije, koje je registrovano kod Agencije za privredne registre 25. avgusta 2003. godine, pod matičnim brojem 07342691, koje zastupa g. Bojan Bojković, po punomoćju od 19. marta 2015 (**Društvo**);

i

(3) **HPK MANAGEMENT D.O.O. BEOGRAD,** društvo sa ograničenom odgovornošću, osnovano po zakonima Republike Srbije, sa sedištem u Bul. Dr Zorana Đinđića 64a, Beograd, koje je registrovano kod Agencije za privredne registre 18. marta 2015. godine, pod matičnim brojem 21091600, koje zastupa g. Peter Kamaras u svojstvu zakonskog zastupnika (**Pružalac usluga**);

i

(4) **HPK ENGINEERING B.V.,** društvo sa ograničenom odgovornošću osnovano po zakonima Holandije, sa registrovanim sedištem u Luna ArenA, Herikerbergweg 238, 1101 CM Amsterdam, Holandija, koje je

3



Amsterdam, the Netherlands, registered with the trade register of the Amsterdam Chamber of Commerce under number 54316413, herein represented by Mr. Peter Kamaras per Power of Attorney dated 17 March 2015 (the **Bidder**).

The RoS, the Company, the Service Provider and the Bidder shall be hereinafter referred to individually as **the Party** or collectively as **the Parties**.

**WHEREAS:**

A.   The RoS wishes to enter this Agreement:

    (a)   in recognition of, and in order to secure for the Company to benefit of the Service Provider's experience and management expertise according to the terms of this Agreement;

    (b)   in order to restructure and establish the long term viability of the Company.

B.   The Bidder submitted its bid in accordance with the public invitation published by the Company on 20 February 2015 in the daily newspaper Politika (the **Invitation**) and his bid has been selected as the most favourable bid by the selection committee designated by the RoS and the Company.

C.   The Service Provider is an entity wholly owned by the Bidder, established for the purposes of conclusion of this Agreement and its performance.

**NOW, THEREFORE, THE PARTIES AGREE AS FOLLOWS:**

**1      DEFINITIONS      AND INTERPRETATION**

**1.1      Definitions**

    **"Affiliate"** means in relation to any

---

raigstrovano kod Privredne komore Amsterdama pod matičnim brojem 54316413, koje zatupa Peter Kamaras po punomoću od 17. marta 2015. godine (**Ponuđač**).

RS, Društvo, Pružalac usluga i Ponuđač su u daljem tekstu zajedno označeni kao **Ugovorne strane** ili pojedinačno kao **Ugovorna strana.**

**PRI ČEMU:**

A.   RS pristupa zaključenju ovog Ugovora:

    (a)   prepoznajući da je potrebno da obezbedi iskustvo i stručnost u upravljanju u korist Društva, a od strane Pružaoca usluga, u skladu sa odredbama Ugovora;

    (b)   u cilju da Društvo restrukturira i obezbedi dugoročno uspešno poslovanje istog; i

B.   Ponuđač je podneo ponudu u skladu sa javnim pozivom objavljenim od strane Društva dana 20. februara 2015. godine u listu „Politika" (**Poziv**) ista je izabrana kao najpovoljnija ponuda od strane komisije određene od strane RS i Društva.

C.   Pružalac usluga je privredno društvo u potpunom vlasništvu Ponuđača, osnovano za potrebe zaključivanja Ugovora i izvršenja obaveza predviđenih istim.

**UGOVORENO JE KAKO SLEDI:**

**1.      DEFINICIJE I TUMAČENJE ODREDBI**

**1.1      Definicije**

    **"Povezano lice"** je bilo koje fizičko ili

4



person be it legal entity or natural person, (a) any other person directly or indirectly Controlling or Controlled by or under common Control with, such a person, or (b) any (i) Officers, Officer, trustee or beneficiary of such a person, (ii) spouse, parent, sibling or descendant of any person described in (i) or spouse, parent, sibling or descendant of the person directly or indirectly Controlling, or which is under common Control with, such person, and (iii) any trust (or its equivalent under any Governing Law) for the benefit of any person described in (i) and (ii);

"**Agreements**" means the agreements for electricity, gas, railway services, technical gas and port services outlined in the CTP which should be or are already signed between the Company and relevant third party prior to Closing;

"**Articles**" means the Memorandum of Association of the Company (the **AoA**) as set out in Schedule 1 hereto;

"**Auditor**" means an independent third party reputable accounting firm appointed in accordance with the terms of this Agreement;

"**Bankruptcy Event**" means, in relation to any legal person, the insolvency, liquidation, amalgamation, reconstruction, reorganisation, bankruptcy, administration, receivership or dissolution of that person (other than a solvent liquidation, solvent amalgamation, solvent reconstruction or solvent reorganisation) and any equivalent or analogous proceeding relating to insolvency of a subject by whatever name known and in whatever jurisdiction;

pravno lice (a) koje je u odnosu na bilo koje drugo lice, posredno ili neposredno, Kontrolno lice ili Kontrolisano lice ili pod zajedničkom Kontrolom istih, ili (b) bilo koji (i) direktori ili direktor i upravnik ili korisnik trasta (engl. trust) istog (ii) supružnik, roditelj, srodnik po pobočnoj liniji, srodnik po pravoj liniji bilo kog lica spomenutog u tački (i) ili supružnik, roditelj, srodnik po pobočnoj liniji, srodnik po pravoj liniji lica koje je posredno ili neposredno Kontrolno lice, ili koje je pod zajedničkom Kontrolom sa istim, i (iii) bilo koji trast (engl. trust) (ili bilo koja druga odgovarajuća pravna forma koju poznaje Merodavno pravo) ustanovljen u korist bilo koje osobe definisane u (i) i (ii);

„**Sporazumi**" su ugovori u vezi električne energije, prirodnog gasa, železničkih usluga, tehničkog gasa i lučkih usluga bliže definisani u PSS koji jesu ili trebaju biti zaključeni između Društva i odgovarajućih trećih lica pre Stupanja na snagu.

"**Opšti akti**" znači Osnivački akt Društva ("**OA**"), priložen u Prilogu 1;

"**Revizor**" je renomirano nezavisno privredno društvo koje obavlja privrednu delatnost pružanja revizorskih usluga imenovano na način predviđen ovim Ugovorom;

"**Stečaj ili likvidacija**" je, u vezi sa bilo kojim pravnim licem, nesposobnost plaćanja, otvaranje stečajnog postupka, statusna promena, reorganizacija, bankrotstvo, prinudna uprava, gašenje pravnog lica (osim dobrovoljne likvidacije, dobrovoljnih statusnih promena, reorganizacije solventnog privrednog društva), kao i svi ostali isti ili slični postupci u vezi sa stečajem lica ma kako isti nazivani u bilo kojoj drugoj jurisdikciji;



**"Business"** means (i) the existing business carried out by the Company and (ii) such other business as may from time to time be carried out by the Company in accordance with Governing Law, subject in each case to obtaining the necessary approvals and licences and to the provisions of the Articles;

**"Business Day"** means a day when the banks are open for commercial banking business in Serbia and the Netherlands;

**"Business Plan"** means the document set in Schedule 2 hereto;

**"Business Registry Agency"** means the Business Registry Agency of the Republic of Serbia established pursuant and in accordance with the Business Registry Agency Act (*Official Gazette of RoS, Nos. 55/2004, 111/2009 and 99/2011*);

**"Closing"** means the moment when the CTP (as defined below) is executed between the Parties, from which moment this Agreement shall come into full force;

**"Closing and Takeover Protocol/CTP"** means a document that shall be executed by the Parties at the Closing in a form and content satisfactory to each of them that shall provide a fully comprehensive state of affairs of the Company as of 31 March 2015 in sufficient detail, inter alia:
(a) Frozen Liabilities,
(b) Agreements,
(c) Commercial Debt,
(d) Current Assets,
(e) Inventory of moveable and immoveable assets of the Company, and
(f) Net Working Capital.

**"Collective Agreement"** means the Collective Agreement of the Company in force at the moment of execution of this Agreement;

**"Privredne delatnosti"** su (i) delatnosti koje Društvo obavlja i (ii) bilo koje druge delatnosti koje Društvo povremeno obavlja u skladu sa Merodavnim pravom, a po dobijanju svih neophodnih odobrenja i dozvola i osim ukoliko suprotno nije predviđeno Opštim aktima;

**"Radni dan"** je dan na koji su banke otvorene radi pružanja finansijskih usluga u Srbiji i u Holandiji;

**"Poslovni plan"** je dokument u Prilogu 2 ovog Ugovora.

**"Agencija za privredne registre"** je Agencija za privredne registre Republike Srbije osnovana u skladu sa Zakonom o Agenciji za privredne registre (*Službeni glasnik Republike Srbije, br. 55/2004, 111/2009 i 99/2011*);

„**Stupanje na snagu**" je trenutak kada bude potpisan PSS od strane Ugovornih strana, a kada će ovaj Ugovor u potpunosti stupiti na pravnu snagu.

„**Protokol o stupanju na snagu/PSS**" je isprava koja će biti potpisana od strane Ugovornih strana u trenutku Stupanja na snagu u formi i sa sadržajem sa kojim se saglase sve Ugovorne strane i koja će sadržati detaljan pregled poslovanja Društva na dan 31. mart 2015. godine, uključujući ali se ne ograničavajući na:
(a) Listu zamrznutih obaveza,
(b) Sporazume,
(c) Komercijalne dugove,
(d) Trenutni kapital,
(e) Spisak pokretne i nepokretne imovine Društva, i
(f) Obrtna sredstva.

„**Kolektivni ugovor**" je kolektivni ugovor u Društvu na snazi u trenutku zaključenja ovog Ugovora;



**"Commercial Debt"** is the debt specified as such in the CTP;

**"Control"** means, directly or indirectly, whether through the ownership of shares/stake, by contract or otherwise (i) the right to have the majority of the voting rights exercisable at a shareholders meeting (or its equivalent) of the person concerned or (ii) the right to appoint, and/or remove and/or direct/procure the decision making process of other corporate bodies (including but not limited to, supervisory boards, managing boards or equivalent thereof of the person concerned), and the terms "Controlled" and "Controlling" shall be construed accordingly;

**"Consultants"** mean the list of experts specified in Schedule 3 hereto, as may be amended from time to time based on the approval of the Supervisory Board by the Qualified majority vote, engaged by the Service Provider for the purposes of managing of various functions of the Company including but not limited to managing sectors of production and maintenance; procurement; sales; finances, accountancy and taxes and financing of investments through use of EU Funds;

**"Current Assets"** means the aggregate of the Company's:

(a) inventories (raw materials, work-in-progress, finished products, tools, consumables, spare parts, slag and skull inventories, as well as other materials such as refractories, mechanical and electrical material, mag lime);

(b) receivables (trade and non-trade receivables, receivables from government for various refunds, receivables for insurance claims and all other claims from customers or organizations in the Republic of Serbia or abroad

„**Komercijalni dug**" je dug koji je tako definisan u PSS;

**"Kontrola"** je, direktno ili indirektno, bilo vlasništvom nad udelima, akcijama, putem posebnog ugovora ili na bilo koji drugi način (i) poseduje većinu svih glasova u skupštini društva (ili u drugom organu sa odgovarajućim ovlašćenjima) ili (ii) pravo da imenuje i/ili razreši i/ili utiče na bilo koji način na proces donošenja odluka bilo kog organa društva (uključujući, ali ne ograničavajući se na nadzorne odbore, odbore direktora ili drugih organa sa odgovarajućim ovlašćenjima), i pojmovi "Kontrolno lice" i "Kontrolisano lice" će se tumačiti u skladu sa ovom definicijom;

„**Savetnici**" su grupa savetnika nabrojana i Prilogu 3, u skladu sa naknadnim izmenama i dopunama istog u skladu sa odobrenjem Nadzornog odbora donetim Kvalifikovanom većinom, koje je Pružalac usluga angažovao u cilju preduzimanja različitih poslova u Društvu uključujući, ali se ne ograničavajući na, upravljanje sektorima za proizvodnju i održavanje; nabavke; prodaju; finansije, računovodstvo i poreska pitanja kao i finansiranje projekata iz fondova EU.

**"Trenutni kapital"** je skup svih:

(a) zaliha (sirovine, nedovršeni proizvodi, gotovi proizvodi, alati, potrošni materijali, zalihe slag-a i skull-a, kao i svih ostalih materijala kao što su vatrostalni, mehanički i električni materijali, mag lime);

(b) potraživanja (potraživanja iz ugovora u privredi i druga potraživanja, potraživanja prema državi u vezi raznih povraćaja sredstava, potraživanja na osnovu tužbe za naknadu iz osiguranja, kao i svih



that will be settled by money contribution to the Company's bank account);

ostalih tužbi od strane potrošača ili organizacija u Republici Srbiji ili inostranstvu koje će se naplatiti time što će se odgovarajuća novčana suma uplatiti na račun Društva u banci);

(c) advances paid to suppliers (advances paid for purchasing of inventories, services or purchasing of the Assets);

(c) predujmovi koji su plaćeni dobavljačima (predujmovi plaćeni radi kupovine zaliha, usluga ili dobara);

(d) deferred prepaid expenses;

(d) unapred plaćeni troškovi sa odložnim rokom;

(e) cash in the Company.

(e) novčana sredstva Društva.

These Current Asset categories will be defined in the CTP and during the Term hereof recognized and measured using accounting policies as per the applicable Serbian accounting laws and regulation, and consistently with the accounting policies used by the Company during the preparation of its statutory 2014 financial statements;

Gore pomenute kategorije Trenutnog kapitala će biti definisane u PSS i tokom Trajanja Ugovora ustanovljavaće se i meriti u skladu sa računovodstvenim standardima koji se mogu primeniti u skladu sa srpskim zakonima i propisima koji se tiču računovodstva, i biće usklađeni sa računovodstvenim standardima koje koristi Društvo prilikom pripremanja finansijskih izveštaja za 2014. godinu;

**"Diligent Business Person Standard"** as defined by the Governing law under the term 'Pažnja dobrog privrednika';

**"Pažnja dobrog privrednika"** kao što je definisana Merodavnim pravom;

**"Dispute"** means any dispute, controversy, claim or disagreement arising directly or indirectly under, out of, in connection with, or in relation to this Agreement (or the subject matter of this Agreement) including, without limitation, any dispute, controversy, claim or disagreement relating to the existence, validity, interpretation, construction, performance, enforcement or termination of this Agreement;

**"Spor"** je svaki spor, nesuglasica, tužba ili neslaganje koja proizilazi, posredno ili neposredno, zbog, iz ili u vezi sa ovim Ugovorom (ili predmetom istog) uključujući, ali se ne ograničavajući na, bilo kakav spor, nesuglasicu, tužbu ili neslaganje koji se tiče postojanja, punovažnosti, tumačenja, sastavljanja, izvršavanja, primene ili raskida ovog Ugovora;

**"Encumbrance"** means any claim, charge, mortgage, pledge, security, lien, option, equity, power of sale, hypothecation, third party rights, right of pre-emption, right of first refusal or security interest of any kind or any like

**"Teret"** je svako potraživanje, založno pravo, hipoteka, zaloga, obezbeđenje, opcija, udeo u kapitalu, pravo prodaje, bezdržavinska zaloga, bilo koje pravo trećeg lica, pravo preče kupovine, ili drugo sredstvo obezbeđenja bilo koje



agreement or arrangement having any similar effect;

**"EUR"** means the Euro, the legal currency in the countries of the European Monetary Union;

**"Frozen Liabilities"** is the debt of the Company specified as such in the CTP;

**"Governing Law"** means the laws, decrees, ordinances, rules and regulations applicable in Serbia (and interpretations thereof by the courts of Serbia having the force of law) and notices and orders thereunder of or by the Government of Serbia or any subdivision or authority thereof or any judicial or administrative body in Serbia, which notices or orders are issued pursuant to Governing Laws and regulations without giving effect to the conflict of law rules;

**"Governmental Authority"** means any and all domestic governmental, administrative, or regulatory bodies, departments, agencies, commissions, authorities or instrumentalities of the Republic of Serbia;

**"Gross Negligence"** means obvious negligence arising in circumstances where the underlying applicable duty of care has not been met by a significant margin, it being the case that the subject conduct (i) fell far below what could reasonably be expected in the circumstances, and (ii) was undertaken with clear disregard of the risks involved (or an indifference to an obvious risk and no reasonable justification

**"Group Companies"** means the Company or any member of its group including and the term "Group Company" shall refer any of them;

**"Key performance indicators"** or **"KPI"** as defined in the Business Plan;

vrste ili bilo koji drugi sporazum ili dogovor koji bi imao slične posledice.

**"EUR"** je Evro, zvanična valuta u zemljama Evropske monetarne unije;

„**Lista zamrznutih obaveza**" je spisak obaveza Društva definisan kao takav u PSS;

**"Merodavno pravo"** su svi zakoni, naredbe, odluke i drugi opšti i pojedinačni akti koji su obavezujući na teritoriji Republike Srbije (kao i sve obavezujuće odluke sudova u Republici Srbiji) i uredbe, odluke i zaključci Vlade Republike Srbije ili bilo kojeg tela iste ili bilo kog drugog sudskog ili upravnog organa Republike Srbije, usvojeni u skladu sa Merodavnim pravom, osim pravila o rešavanju sukoba zakona sa propisima drugih zemalja.

**"Organi javne vlasti"** su bilo koji i svi domaći državni, upravni ili regulatorni, službe, agencije, komisije, organi sa javnim ovlašćenjima, kao i svi ostali organi kojima je delegirano vršenje javnih ovlašćenja ili javne vlasti u Republici Srbiji;

**"Krajnja nepažnja"** je očigledna nepažnja koja postoji u slučaju da bilo koje lice nije primenilo odgovarajući standard pažnje, te da je pri preduzimanju predmetnih radnji (i) odstupilo od nivoa pažnje koji je uobičajen u datim okolnostima, i (ii) da su očigledno zanemarene sve moguće posledice u skladu sa okolnostima slučaja (ili da je olako smatrao da do posledica neće doći i to bez opravdanog razloga);

**"Grupa društava"** su Društvo i bilo koji član grupe društava čiji je član Društvo, te će se termin "Grupa društava" odnositi na sve takve članove;

**"Ključni indikatori poslovanja"** ili **"KIP"** kao što su isti definisani u



Poslovnom planu;

**"Management Fee"** means the remunerations defined in clauses 3.2.4, 3.2.5, 3.2.6, 3.2.7, 3.2.8 and 3.2.9 inclusively;

**"Naknada za upravljanje"** su naknade kao što su definisane u tačkama 3.2.4, 3.2.5, 3.2.6, 3.2.7, 3.2.8 i 3.2.9;

**"Management Services"** means the management services to be provided by the Service Provider pursuant to clause 3;

**"Usluge upravljanja"** su usluge upravljanja koje pruža Pružalac usluga u skladu sa članom 3;

**"Material"** means in respect of any fact, object, claim, liability or event which could cause, would result or lead directly or indirectly to a significant impact on, *inter alia*, the business, assets or operations of the Company exceeding EUR 500,000 (five hundred thousand euros) or equivalent in other currency, except those disclosed within this Agreement;

**"Značajno"** znači, u vezi bilo koje činjenice, predmeta, potraživanja, obaveze ili okolnosti koja bi mogla da prouzrokuje ili bi mogla da posredno ili neposredno u velikoj meri uticati na, *inter alia*, obavljanje privredne delatnosti, imovinu ili svakodnevne poslove Društva u iznosu koji prevazilazi 500.000 EUR (petsto hiljada eura) ili u nekoj drugoj valuti u odgovarajućem iznosu, osim za činjenice, predmete, potraživanja, obaveze ili okolnosti koje su navedene u ovom Ugovoru;

**"Material Adverse Effect"** means any adverse change in the Assets of the Company in the amount exceeding EUR 500,000 (five hundred thousand euros) or equivalent in other currency (jointly or individually);

**"Značajno nepovoljne posledice"** znače bilo koje smanjenje imovine Društva (uključujući i odnos imovine prema obavezama Društva), u iznosu koji prevazilazi 500.000 EUR (petsto hiljada eura) EUR ili u nekoj drugoj valuti u odgovarajućem iznosu (pojedinačno ili zajedno sa drugim Značajno nepovoljnim posledicama);

**"Net Working Capital"** means the Current Assets reduced by all:

**"Obrtna sredstva"** su Trenutni kapital umanjen za sve:

(a) liabilities to domestic or foreign suppliers for purchases of any goods, assets or services;

(a) obaveze prema domaćim ili stranim dobavljačima u vezi kupovine bilo kojeg dobra ili usluge;

(b) liabilities to banks or other institutions for working capital loans, maintenance loans, capital expenditure loans, leases, overdrafts, etc.;

(b) obaveze prema bankama ili drugim finansijskim institucijama koje su dale zajam za obrtna sredstva, zajmove za održavanje, kredite za kapitalne troškove, zakupe, minuse na tekućim računima i dr.;

(c) liabilities to government for

(c) obaveze prema državi za sve



unpaid taxes, contributions, custom duties or any other fiscal liabilities;

(d) liabilities to employees for salaries, bonuses and any other remunerations (excluding employee benefits calculated under IAS 19);

(e) accrued expenses;

(f) liabilities to customers for advance payments received.

These Net Working Capital categories will be set at Closing by CTP and during the Term hereof recognized and measured using accounting policies as per the applicable Serbian accounting laws and regulation, and in accordance with the accounting policies used by the Company during the preparation of its statutory 2014 financial statements;

**"Non-Permitted Deviation"** means any deviation from the Business Plan that involves:

(a) a fundamental alteration of the commercial objectives of the current Business Plan;

(b) a reduction of the number of Consultants engaged by the Service Provider below 12, or

(c) a reduction of the Net Working Capital of the Company, at any time, below the amount of USD 80,000,000 (eighty million dollars).

"Officers" means the CEO (in Serbian "generalni direktor") registered before the Business Registry Agency as legal representative i.e. a director) and the OFGR (in Serbian "direktor za odnose sa državnim organima i organizacijama") nominated by the RoS and registered before the Business

---

neplaćene poreze, doprinose, carinske obaveze ili bilo koje ostale fiskalne obaveze;

(d) obaveze prema zaposlenima za zarade, podsticaje ili za sve ostale naknade (isključujući naknade zaposlenima koji se računaju u skladu IAS 19);

(e) plative troškove;

(f) obaveze prema potrošačima koje proizilaze iz primljenih predujmova.

Gore pomenute kategorije Obrtnih sredstava će biti definisane u PSS i tokom Trajanja Ugovora i ustanovljavaće se i meriti u skladu sa računovodstvenim standardima koji se mogu primeniti u skladu sa srpskim zakonima i propisima koji se tiču računovodstva, i biće usklađeni sa računovodstvenim standardima koje koristi Društvo prilikom pripremanja finansijskih izveštaja za 2014. godinu;

**"Nedopušteno odstupanje"** je svako odstupanje od Strateškog plana i/ili Plana poslovanja koji uključuje:

(a) bitnu promenu komercijalnih ciljeva sadržanih Planu poslovanja; ili

(b) smanjenje broja Savetnika angažovanih od strane Pružaoca usluga ispod 12; ili

(c) smanjenje Trenutnog kapitala Društva, u bilo kom trenutku, ispod iznosa od 80.000.000,00 USD (osamdeset miliona američkih dolara).

"Direktori" su generalni direktor Društva, registrovan kao takav pri Agenciji za privredne registre, i direktor za odnose sa državnim organima i organizacijama Društva koga predlaže RS i koji je registrovan pri Agenciji za privredne registre;



Registry Agency as legal representative i.e. a director) of the Company;

**"Proceeding"** means any action at law or equity, arbitration, civil proceeding, administrative, audit, other hearing, investigation, or civil, criminal, administrative, offence, or investigative suit commenced, brought, conducted, or heard by or before, or otherwise involving, any Governmental Authority, arbitral tribunal, mediator, arbitrator or other similar forum of dispute resolution, or any judicial body as may have competence on the basis of the Agreement or the Governing Law;

**"Postupak"** je svaki sudski postupak, arbitraža, upravni postupak, revizija, druga vrsta saslušavanja, istraga, ili građanska, krivična, upravna, prekršajna ili druga tužba, optužni akt ili istima izjednačen akt kojom se otpočinje parnica ili parnica, krivični, prekršajni, upravni ili sa istima izjednačen postupak pred ili na drugi način uključujući bilo koji Organ javne vlasti, arbitražno veće, medijatora, arbitra ili bilo koji drugi organ za rešavanje sporova, ili bilo koji drugi sudski organ koje može imati nadležnost na osnovu ovog Ugovora ili Merodavnog prava;

**"Qualified majority vote"** means a majority vote of 80% of all the members of the body in question;

**"Kvalifikovana većina glasova"** je većina glasova od 80% svih članova organa upravljanja Društva;

**"Raw Materials Agreements"** means agreement/s on supply of raw materials to the Company to be concluded between the Company, as the purchaser, and the Service Provider or the Bidder and one of their Affiliates, as the supplier of such raw materials, that will, inter alia, include provisions securing the right of the Company to (i) at least 60 (sixty) calendar days of delayed payment of such raw materials (ii) have in any moment of the validity of the Raw Material Agreements on a Company premises a stock of delivered raw materials and/or raw materials ordered and in transit to the Company of a minimum USD 20,000,000 (twenty million dollars) value. For avoidance of doubt, such Raw Material Agreements shall be valid and legally binding during the entire Term of this Agreement;

„**Ugovori o sirovinama**" su ugovor(i) o nabavci sirovina Društvu koji će bit zaključeni između Društva, u svojstvu kupca, i Pružaoca usluga ili Ponuđača ili sa njima Povezanim licima, u svojstvu prodavca sirovina, koji će, između ostalog, uključiti odredbe koje će Društvu garantovati (i) odloženo plaćanje cene predmetnih sirovina od barem 60 kalendarskih dana (ii) da će Društvo u toku celokupnog perioda važenja Ugovora o sirovinama imati u prostorijama Društva zalihu isporučenih sirovina i/ili naručenih sirovina koje su u prevozu do Društva u vrednosti od najmanje 20.000.000 USD (dvadeset miliona američkih dolara). U cilju izbegavanja svake sumnje, takvi Ugovori o sirovinama će važiti u celokupnom periodu Trajanja Ugovora;

**"Registered Encumbrances"** are any and all Encumbrances validly registered over the Company moveable and/or immoveable assets as set out in Schedule 4 hereof;

„**Registrovana založna prava**" su sva založna prava registrovana na pokretnoj i/ili nepokretnoj imovini Društva kao što su definisana u Prilogu 4;



"**Regulatory Approvals**" has the meaning as defined in Schedule 5;

"**Related Party Arrangement**" means any arrangement, transaction or agreement (or any modification of any arrangement, transaction or agreement) involving the Company or any subsidiary or any other Affiliate thereof or the business or properties thereof, on the one hand, and the Service Provider or any Affiliate or the business or properties thereof (whether as a party thereto or receiver or provider of any accommodation, consideration, goods or services), on the other hand;

"**RSD**" means Serbian Dinar, the legal currency in the Republic of Serbia;

"**Serbian Companies Act**" means the Companies Act of the Republic of Serbia (as published in the Official Gazette of the Republic of Serbia 36/2011, 99/2011, 83/2014 and 5/2015), as the same may be amended, supplemented and in effect from time to time;

"**Shares**" means the share capital of the Company;

"**Simple majority vote**" means a majority vote of all the members of the body in question;

"**Subsidiary**" means (i) an entity directly or indirectly Controlled by the Company, and/or (ii) an entity in which the Company directly or indirectly possesses ownership in the percentage that secures Control of the Company over such person;

"**Supervisory Board**" means the Supervisory Board of the Company as defined in the AoA;

"**Term**" means the term of this Agreement specified in clause 7, as may

"**Prethodna odobrenja**" kao što je definisano u Prilogu 5;

"**Poslovi sa povezanim licima**" su svi sporazumi, transakcije ili ugovori (ili izmene i dopune bilo kojih sporazuma, transakcija ili ugovora) koji su zaključeni između Društva ili Zavisnih lica ili bilo kojeg drugog Povezanog lica Društva ili u vezi sa obavljanjem privredne delatnosti ili imovine istih, s jedne strane, i Pružaoca usluga i bilo kojeg Povezanog lica Pružaoca usluga ili u vezi sa obavljanjem privredne delatnosti ili imovine istih (bez obzira da li su ta lica u svojstvu ugovorne strane, ili u svojstvu kupca ili prodavca u vezi pružanja bilo kojih dobara i usluga), s druge strane;

"**RSD**" je srpski dinar, zvanična valuta Republike Srbije;

"**Zakon o privrednim društvima**" je Zakon o privrednim društvima Republike Srbije (*Službeni glasnik Republike Srbije 36/2011, 99/2011, 83/2014 i 5/2015*), sa svim naknadnim izmenama i dopunama istog;

"**Udeo**" je udeo u kapitalu Društva;

"**Prosta većina glasova**" je većina glasova svih članova određenog organa;

"**Zavisno lice**" je (i) subjekt prava koji je, posredno ili neposredno, Kontrolisano od strane Društva, i/ili (ii) subjekt prava u kojem Društvo posredno ili neposredno poseduje udeo u kapitalu koji omogućuje Društvu Kontrolu nad istim subjektom prava;

"**Nadzorni odbor**" je Nadzorni odbor Društva, kao što je definisan u OA;

"**Trajanje Ugovora**" je trajanje ovog Ugovora, kao što je definisano u članu



be extended in accordance with clause 7 hereof;

**"Termination Fee"** means the amount equal to 6 (six) times the Fixed Fee specified in clause 3.2.4 (in total EUR 2,040,000);

**"Trade Unions"** are the following trade unions existing in the Company:
- Samostalni Sindikat Zelezara Smederevo
- Nezavisni Sindikat Metalaca U. S. Steel Serbia d.o.o.
- ASNS USS

**"Transitional Period"** means period of time between the signing date and the Closing;

**"USD"** means the United States Dollar, the legal currency of the United States of America;

**"Vis Major"** means any unforeseeable event or circumstance beyond the reasonable control of a Party which materially affects the ability of such Party to perform its obligations under this Agreement including but not limited to any war, declared or not, or hostilities, blockade, revolution, insurrection, riot, public disorder, act or campaign of terrorism, fire, flood, earthquake, volcanic activity, storm, typhoons, lightning, epidemic.

**1.2     Interpretation**

1.2.1   In this Agreement, unless otherwise specified:

1.2.1.1   if the day on which any act, matter or thing is to be done under this Agreement is not a Business Day, the act, matter or thing must be done on the next Business Day;

1.2.1.2   a reference in this Agreement to any law, legislation or legislative provision includes any statutory modification,

7, koje može biti produženo u skladu sa članom 7;

**"Naknada za raskid Ugovora"** je iznos jednak šestostrukom iznosu Fiksne naknade, kao što je ista određena u tački 3.2.4 (ukupno 2.040.000,00 EUR);

**"Sindikati"** su ispod nabrojani sindikati koji su aktivni u Društvu:
- Samostalni Sindikat Železara Smederevo
- Nezavisni Sindikat Metalaca U. S. Steel Serbia d.o.o.
- ASNS USS

**"Prelazni period"** je period od dana potpisivanja ovog Ugovora do dana Stupanja na snagu;

**"USD"** je američki dolar, zvanična valuta Sjedinjenih Američkih Država;

**"Viša sila"** je svaki događaj ili okolnost koja se ne može predvideti, a za koji nije odgovorna nijedna Ugovorna strana i koji Značajno utiče na mogućnost te Ugovorne strane da ispuni svoje obaveze koje proizilaze iz ovog Ugovora uključujući, ali ne ograničavajući se na bilo koji rat, bilo da je objavljen ili ne, ili neprijateljstvo, blokadu, revoluciju, ustanak, pobunu, javne nerede, terorističko udruživanje ili teroristički akt, požare, poplave, zemljotrese, vulkanske aktivnosti, oluje, tajfune, gromove i epidemije;

**1.2     Tumačenje odredbi**

1.2.1   U ovom Ugovoru, osim ukoliko suprotno nije predviđeno istim:

1.2.1.1   ukoliko bilo koju radnju iz ovog Ugovora treba preduzeti na dan koji pada na dan koji nije Radni dan ta radnja mora se preduzeti sledećeg Radnog dana;

1.2.1.2   pozivanje na bilo koji zakon, propis ili zakonsku odredbu uključuje i pozivanje na sve naknadne promene,



amendment or re-enactment, and any subordinate legislation or regulations issued under that legislation or legislative provision;

izmene i dopune istih, kao i na sve podzakonske akte ili propise koji su usvojeni na osnovu tog zakona, propisa ili zakonske odredbe.;

1.2.1.3 a reference in this Agreement to any agreement or document is to that agreement or document as amended, novated, supplemented or replaced;

1.2.1.3 pozivanje na bilo koji ugovor, ispravu, dokument ili drugi akt uključuje i pozivanje na sve naknadne promene, izmene, dopune, prenov i zamene istih;

1.2.1.4 references to "the Agreement" include its introductory notes, recitals, preamble, appendices, exhibits and schedules (which are incorporated herein by reference and all represent the integral part of this Agreement) and this Agreement as from time to time amended, unless otherwise stated;

1.2.1.4 pozivanje na "Ugovor" uključuje i pozivanje na uvodne napomene, priloge, preambulu kao i sve ostale delove istog (koji svi delovi čine sastavni i nerazdvojivi deo ovog Ugovora), kao i na sve naknadne izmene i dopune istog, osim ukoliko se drugačije ne predvidi ovim Ugovorom;

1.2.1.5 a reference to a clause, part, schedule or attachment is a reference to a clause, part, schedule or attachment of or to this Agreement;

1.2.1.5 pozivanje na član, deo, prilog, stav, tačku ili alineju smatraće se pozivanjem na član, deo, prilog, stav, tačku ili alineju ovog Ugovora;

1.2.1.6 references to a law, statute or statutory provision include that law, statute or provision as from time to time modified or re-enacted or consolidated, whether before or after the date of the Agreement, except if otherwise explicitly specified;

1.2.1.6 pozivanje na zakon, podzakonski akt ili zakonsku odredbu uključuje i sve naknadne promene, izmene ili dopune tog zakona, podzakonskog akta ili zakonske odredbe, bez obzira da li su iste učinjene pre ili posle zaključenja Ugovora, osim ukoliko se drugačije izričito ne predvidi Ugovorom;

1.2.1.7 words in the singular include the plural, words in the plural include the singular, words importing the masculine gender include the feminine, and words importing the feminine gender include the masculine;

1.2.1.7 reči u jednini uključuju i množinu istih, reči koje su u muškom rodu uključuju i ženski rod, i obrnuto;

1.2.1.8 references to "persons" shall include individual persons, bodies corporate (wherever incorporated), unincorporated associations, partnerships and any type of legal entity;

1.2.1.8 pozivanje na "lica" uključuje pozivanje na fizička lica, pravna lica, kao i na sve ostale entitete koji imaju poslovnu i/ili procesnu sposobnost;

1.2.1.9 a reference to the word 'include' or 'including' is to be construed without limitation;

1.2.1.9 reč "uključujući" ili "uključuje" će se tumačiti tako da ne predstavlja ograničavajuće taksativno nabrajanje;

1.2.1.10 the table of contents and headings to clauses and schedules are for convenience only and do not affect

1.2.1.10 sadržaj ovog Ugovora, kao ni naslovi i nazivi članova ili priloga ovog Ugovora služe lakšem čitanju i ni na



| | |
|---|---|
| the interpretation of this Agreement; and | koji način ne utiču na tumačenje ovog Ugovora; i |
| 1.2.1.11      unless otherwise agreed to by the Parties, the words "consent of the RoS" or words of similar import means a written consent signed by a duly authorised representative of the RoS under Governing Law. | 1.2.1.11      osim ukoliko drugačije ne bude ugovoreno između Ugovornih strana, sintagma "saglasnost RS" ili druge sintagme koje imaju slično značenje označavaće pismenu saglasnost potpisanu od strane ovlašćenog zastupnika RS u skladu Merodavnim pravom. |

| | | | |
|---|---|---|---|
| **2** | **SIGNING AND CLOSING OF THIS AGREEMENT** | **2.** | **POTPISIVANJE I STUPANJE NA SNAGU OVOG UGOVORA** |
| 2.1 | The following clauses of this agreement will come into force at the signing day hereof Clause 1 (Definitions and Interpretation), Clause 2 (Signing and Closing of this Agreement), Clause 6 (Warranties and Covenants), Clause 8 (Termination), Clause 9 (Vis Major), Clause 12 (Announcements), Clause 13 (Confidentiality), Clause 14 (Notices and Communications), Clause 15 (Miscellaneous Matters), Clause 16 (Dispute Resolution) and Clause 17 (Choice of Law and Jurisdiction). | 2.1 | Sledeći članovi ovog Ugovora će stupiti na snagu na dan potpisivanja ovog Ugovora: član 1 (Definicije i tumačenje odredbi), član 2 (Potpisivanje i stupanje na snagu ovog ugovora), član 6 (Izjave i garancije), član 8 (Raskid Ugovora), član 9 (Viša sila), član 12 (Objave), član 13 (Poverljivost), član 14 (Obaveštenja i ostale prepiske), član 15 (Prelazne i završne odredbe), član 16 (Rešavanje sporova) i član 17 (Merodavno pravo i nadležnost suda). |
| 2.2 | The remaining clauses of this Agreement will come into force at the Closing of this transaction. | 2.2 | Preostali članovi stupiće na snagu u trenutku Stupanja na snagu. |
| 2.3 | The Closing of this transaction shall occur when the following preconditions are met: | 2.3 | Stupanje na snagu će nastupiti kada: |
| 2.3.1 | The amendments of the Collective Agreement between the Company and the Trade Unions are signed in a form approved by the Service Provider and duly registered with the competent Governmental Authority; | 2.3.1 | Izmene i dopune Kolektivnog ugovora između Društva i sindikata bude potpisan u formi i sa sadržinom odobrenom od strane Pružaoca usluga i registrovan kod nadležnog Organa javne vlasti; |
| 2.3.2 | The Agreements are duly signed and in full force between the Company and relevant third parties on fair market conditions and in a form reasonably satisfactory to all Parties; | 2.3.2 | Sporazumi budu potpisani i stupe na snagu između Društva i odgovarajućeg trećeg lica, a u skladu sa tržišnim uslovima i u formi o kojoj se razumno saglase sve Ugovorne strane; |
| 2.3.3 | The Raw Materials Agreements are duly signed in a form reasonably satisfactory to all Parties with the same validity period as defined for this | 2.3.3 | Ugovori o sirovinama budu potpisani u formi o kojoj se razumno saglase sve Ugovorne strane i sa periodom važenja koji odgovara periodu važenja ovog |



|  | Agreement as well as with an automatic termination clause in case of termination of this Agreement; | | Ugovora, a koji će sadržati odredbu o automatskom raskidu u slučaju raskida ovog Ugovora; |
|---|---|---|---|
| 2.3.4 | The Registered Encumbrances are duly deleted from any applicable registries based on final and non-appealable decisions of the competent Governmental Authority; | 2.3.4 | Registrovana založna prava budu izbrisana na zakonom propisan način iz odgovarajućeg registra a na osnovu pravnosnažne odluke odgovarajućeg Organa javne vlasti, na koju se ne mogu izjaviti redovni pravni lekovi; |
| 2.3.5 | All Regulatory Approvals have been duly obtained; | 2.3.5 | Sva Prethodna odobrenja budu pribavljena u skladu sa zakonom; |
| 2.3.6 | All subjects designated as creditors of the Frozen Liabilities shall sign legally binding documents in a form approved by the Service Company confirming that they will not make an attempt to collect and/or enforce any of the Frozen Liabilities towards the Company during the entire Term of this Agreement; | 2.3.6 | Sva lica sa svojstvom poverioca u potraživanjima sa Liste zamrznutih obaveza potpišu pravno obavezujuću ispravu u formi koju odobri Pružalac usluga a kojom će se ista lica obavezati da neće preduzeti bilo koju radnju u cilju naplate i/ili izvršenja bilo kog potraživanja prema Društvu sa Liste zamrznutih potraživanja u toku celokupnog Trajanja Ugovora; |
| 2.3.7 | The Service Provider has executed an agreement on professional insurance indemnity in a form approved by the RoS and the Company with minimum insurance coverage of EUR 5,000,000 (five million euros); | 2.3.7 | Pružalac usluga zaključi ugovor o osiguranju od profesionalne odgovornosti u formi odobrenoj od strane RS i Društva sa osiguranom sumom ne manjom od 5.000.000,00 EUR (pet miliona eura); |
| 2.3.8 | The Parties have agreed on the Auditor for the entire Term of this Agreement; | 2.3.8 | Ugovorne strane postignu saglasnost o Revizoru koji će biti imenovan na period Trajanja Ugovora; |
| 2.3.9 | The CTP is agreed upon and initialised by the Parties. | 2.3.9 | PSS bude dogovoren i parafiran od strane Ugovornih Strana |
| 2.4 | After all nine of the above conditions are fulfilled the RoS as the sole shareholder of the Company shall pass the AoA in the form as set out in Schedule 1 hereof. | 2.4 | Kada svih devet gore nabrojanih uslova bude ispunjeno RS će, u svojstvu jedinog člana Društva, usvojiti OA u formi određenoj u Prilogu 1. |
| 2.5 | Immediately after the new AoA is registered with the Business Registry Agency and on the same day the Service Provider shall be appointed as the CEO of the Company while person nominated by the RoS shall be appointed as the OFGR of the Company and this decision shall be registered by the Business Registry Agency. | 2.5 | Neposredno nakon što novi OA bude registrovan kod Agenciji za privredne registre, a na dan te registracije Pružalac usluga će biti imenovan za generalnog direktora Društva dok će lice predloženo od strane RS biti imenovano za direktora za odnose sa državnim organima i organizacijama Društva i odluka o njihovom |



imenovanju će biti registrovana kod Agencije za privredne registre.

2.6 The RoS as the sole shareholder of the Company shall nominate three members of the Supervisory Board and the Service Provider shall have right to nominate two members of the Supervisory Board. In addition, the individuals nominated by the Service Provider as members of the Supervisory Board are to be Mr. John Goodish and Mr. Peter Kamaras.

2.6 RS će, u svojstvu jedinog člana Društva, imenovati tri člana Nadzornog odbora a Pružalac usluga će imati pravo da imenuje dva člana Nadzornog odbora. Takođe sledeća lica će biti imenovana za članove Nadzornog odbora od strane Pružaoca usluga: John Goodish i Peter Kamaras

2.7 The RoS as the sole shareholder of the Company shall ensure that the chairperson of the Supervisory Board shall be Mr. John Goodish. On its first meeting immediately after the appointment, the Supervisory Board shall adopt the Business Plan as given in Schedule 2 hereto.

2.7 RS će, u svojstvu jedinog člana Društva, obezbediti da Peter Kamaras bude izabran za predsednika Nadzornog odbora. Na prvoj sednici nakon imenovanja, Nadzorni odbor će usvojiti Poslovni plan definisan u Prilogu 2.

2.8 After the Service Provider is registered as the CEO of the Company and the physical person nominated by the RoS is registered as the OFGR of the Company and after the new Supervisory Board is registered in the Business Registry Agency the CTP shall be finally signed between the Parties without any further delays.

2.8 Nakon što Pružalac usluga bude registrovan kao generalni direktor Društva i fizičko lice određeno od strane RS bude registrovano kao direktor za odnose sa državnim organima i organizacijama Društva kod Agencije za privredne registre PSS će biti potpisan od strane Ugovornih strana bez odlaganja.

2.9 **Execution of the CTP shall be considered as the moment of Closing.**

2.9 Potpisivanje PSS će se smatrati trenutkom Stupanja na snagu.

2.10 During the Transitional Period the Company shall not make any decision outside the ordinary business of the Company or with a commercial impact on the Company exceeding the amount of EUR 100,000 (one hundred thousand euros) without written approval of the Service Provider.

2.10 U toku Prelaznog perioda Društvo neće donositi odluke koje ne spadaju u redovno poslovanje Društva ili sa komercijalnim posledicama po Društvo većim od 100.000,00 EUR (sto hiljada eura) bez pismene saglasnosti Pružaoca usluga.

2.11 Such approval shall be requested in writing by the Company and not unreasonably withheld from the Service Provider. If the Service Provider does not provide its written answer in respect of the approval request submitted by the Company within 3 (three) Business Days from the day when the approval request was

2.11 Takva saglasnost će biti zatražena pismenim putem od strane Društva i neće biti uskraćena od strane Pružaoca usluga bez osnovanog razloga. Ukoliko Pružalac usluga ne izda pismenu saglasnost u roku od 3 (tri) Radna dana od dana kada je pismeni zahtev za saglasnost uredno primljen, smatraće se da je saglasnost izdata.



duly received from the Company, it shall be deemed that the requested approval was granted.

2.12 If the Closing does not occur within 90 (ninety) days after signing date, any Party may terminate this Agreement by a unilateral termination notice.

2.12 Ukoliko trenutak Stupanja na snagu ne nastupi u roku od 90 (devedeset) dana od dana potpisivanja ovog Ugovora svaka od Ugovornih strana će imati pravo da raskine ovaj Ugovor jednostranom izjavom volje.

2.13 All Parties undertake that they will act with a Diligent Business Person Standard in order to insure that the Closing of this Agreement occurs as anticipated herein.

2.13 Sve Ugovorne strane se obavezuju da preduzmu sve radnje neophodne za nastupanje Stupanja na snagu u skladu sa Pažnjom dobrog privrednika.

# 3 MANAGEMENT OF THE COMPANY

## 3.1 Business of the Company

3.1.1 The Parties hereby acknowledge that this Agreement is to serve as an interim solution until the Company is privatized. Therefore, the purpose of this Agreement is to secure professional management of the Company which would attest to the Company`s ability to successfully compete as a profit-oriented undertaking on the open market.

3.1.2 The Service Provider, the Company, the Bidder and the RoS shall each procure that the Business is conducted pursuant to the Diligent Business Person Standard and in the best interests of the Company, always in full compliance with all reasonable professional standards, in accordance with this Agreement and the Governing Law, and each Party hereby agrees that it shall use its best endeavours to cooperate with the other in the development, promotion, and conduct of the Business and the Company.

3.1.3 Moreover, the Parties hereby acknowledge that the adherence to the Business Plan is essential in order for the Company to be successfully restructured and returned to viability, and the Service Provider hereby

# 3. UPRAVLJANJE DRUŠTVOM

## 3.1 Privredne delatnosti Društva

3.1.1 Ugovorne strane su saglasne da će ovaj Ugovor služiti kao privremeno rešenje dok se uspešno ne sprovede postupak privatizacije nad Društvom. Samim tim, cilj ovog Ugovora je da osigura profesionalno upravljanje Društvom kako bi se potvrdilo svojstvo Društva kao uspešnog i konkurentnog učesnika na tržištu koje se bavi obavljanjem privredne delatnosti radi sticanja dobiti na slobodnom tržištu.

3.1.2 Pružalac usluga, Ponuđač, Društvo i RS se obavezuju da će se Privredne delatnosti obavljati u skladu sa Pažnjom dobrog privrednika i u najboljem interesu Društva, uvek u potpunosti u skladu sa standardima struke, ovim Ugovorom i Merodavnim pravom, te se svaka od Ugovornih strana obavezuje da će uložiti zajedničke napore tokom saradnje sa ciljem razvoja, promovisanja ugleda i obavljanja Privrednih delatnosti i ostalih poslova Društva.

3.1.3 Nadalje, Ugovorne strane su saglasne da je preduzimanje radnji u skladu sa Poslovnim planom od najveće važnosti kako bi se Društvo uspešno restrukturiralo i počelo uspešno da posluje, i da se Pružalac usluga

19



commits to work together with the RoS, the Bidder and the Company in implementing the Business Plan and agrees that the management powers and authorities granted to it shall serve for implementation of the provisions of the Business Plan.

obavezuje da će raditi zajedno sa Ponuđačem, RS i Društvom na primeni Poslovnog plana, kao i da je saglasan da će svoja upravljačka ovlašćenja koristiti u cilju primene odredaba Poslovnog plana.

3.1.4 Notwithstanding the above, however, the Parties recognize that the Business Plan may be updated by the Supervisory Board and adjusted on quarterly basis as recommended by the CEO in order for the Company to be able to answer to the changes of the market and other relevant commercial conditions.

3.1.4 Međutim, bez obzira na gore izloženo, Ugovorne strane ovim putem potvrđuju da se Poslovni plan može dopuniti od strane Nadzornog odbora i prilagoditi na kvartalnoj bazi u skladu sa predlozima generalnog direktora kako bi se omogućilo da Društvo adekvatno reaguje na promene na tržištu i druge poslovne okolnosti.

3.1.5 The Service Provider commits:

3.1.5 Pružalac usluga se obavezuje da:

3.1.5.1 to at all times keep the Net Working Capital of the Company not lower than USD 80,000,000 (eighty million dollars);

3.1.5.1 u svakom trenutku održi Obrtna sredstva Društva u iznosu od najmanje 80.000.000,00 USD (osamdeset miliona američkih dolara);

3.1.5.2 to engage the Consultants for the Business of the Company during the entire Term of this Agreement;

3.1.5.2 da obezbedi da Savetnici angažovani radi savetovanja u vezi Poslovanja Društva budu angažovani u toku celokupnog Trajanja Ugovora;

3.1.5.3 to use its best efforts in order to increase the existing level of production and to utilize the existing production capacities to the greatest possible extent.

3.1.5.3 iskoristi Pažnju dobrog privrednika i sva raspoloživa sredstva kako bi povećao postojeći nivo proizvodnje i upotrebio postojeće proizvodne kapacitete u najvećoj mogućoj meri.

3.1.6 The Service Provider hereby acknowledges that restructuring of the Company is subject to rules regulating the RoS' accession to the European Union (the **EU**) and the Service Provider hereby fully commits to consider in good faith implementation of any changes to the Business Plan which might be agreed to during the accession negotiations between the RoS and the EU or any ancillary proceedings related thereto.

3.1.6 Pružalac usluga ovim putem potvrđuje da je u potpunosti obavešten da se na proces restrukturiranja Društva primenjuju norme koje regulišu pristupanje RS Evropskoj uniji ( „**EU**"), te se Pružalac usluga obavezuje da u skladu sa načelom savesnosti i poštenja detaljno razlotri sve promene Poslovnog plana koje mogu biti ugovorene u toku pristupnih pregovora između RS i EU ili u toku sa njima povezanih postupaka.

3.1.7 On the other hand, the RoS shall, to the extent possible, cooperate with the Service Provider and the Company in order to obtain funds from the EU for the benefit of the Company under the

3.1.7 Sa druge strane, RS se obavezuje da, u najvećoj razumnoj meri, sarađuje sa Pružaocem usluga i Društvom u cilju pribavljanja sredstava iz fondova EU za potrebe Društva u skladu sa



| | |
|---|---|
| terms set in the Business Plan. | odredbama Poslovnog plana. |

### 3.2 Provision of Management Services

3.2.1 The Service Provider shall provide the Company with the Management Services during the Term.

3.2.2 The Service Provider covenants that, during the Term, it shall at all times make available to and deploy for the benefit of the Company, the Consultants of reasonably equivalent levels of management skill and experience as the management personnel of the Service Provider for the fulfilment by the Service Provider of its responsibility with respect to the provision of the Management Services.

3.2.3 The Service Provider shall exercise its management authority and responsibility principally through its role as the Chief Executive Officer of the Company (the **CEO**), who shall manage the day to day operations of the Company and the other management functions described in clause 3.4, and through the two members of the Supervisory Board nominated by the Service Provider, all appointed pursuant to clause 2.6 hereof.

3.2.4 The Service Provider shall be entitled to a Management Fee for its Management Services. The Management Fee shall consist of the fixed fee and variable fee as more closely defined below.

3.2.5 The fixed portion of the Management Fee shall amount EUR 340,000 (three hundred and forty thousand euros) per month (VAT exclusive) (the **Fixed Fee**).

3.2.6 The variable portion of the Management Fee (the **Variable Fee**) shall consist of two segments: (i) the amount of fee payable on basis of performance (the **Performance Based Variable Fee**) and (ii) the milestone bonuses (the **Milestone Bonuses**), all

### 3.2 Pružanje Usluga upravljanja

3.2.1 Pružalac usluga se obavezuje da će Društvu pružati Usluge upravljanja u toku celokupnog Trajanja Ugovora.

3.2.2 Pružalac usluga se obavezuje da će radi ispunjenja svojih obaveza u vezi sa pružanjem Usluga upravljanja koje je preuzeo na osnovu ovog Ugovora, u toku celokupnog Trajanja Ugovora, u bilo kom trenutku staviti na raspolaganje Društvu Savetnika koji poseduju upravljačka znanja, veštine i iskustva istovetna onim koje poseduju lica zaposlena na odgovarajućim funkcijama kod Pružaoca usluga.

3.2.3 Pružalac usluga će vršiti svoja upravljačka ovlašćenja i dužnosti prevashodno putem sopstvenih ovlašćenja koja su mu poverena na osnovu vršenja funkcije generalnog direktora Društva (**generalni direktor**), te da će preduzimati poslove koji spadaju u redovno poslovanje Društva i vršiti druga upravljačka ovlašćenja predviđena stavom 3.4 kao i putem dva člana Nadzornog odbora predloženih od strane Pružaoca usluga, koji su imenovani u skladu sa tačkom 2.6.

3.2.4 Pružalac usluga će imati pravo na Naknadu za upravljanje za pružanje Usluga upravljanja. Naknada za upravljanje će se sastojati od fiksne i varijabilne naknade, a koje su bliže određene ispod.

3.2.5 Fiksni deo Naknade za upravljanje će biti 340.000,00 EUR (trista četrdeset hiljada eura) mesečno (bez PDV) (u daljem tekstu: **Fiksna naknada**).

3.2.6 Varijabilni deo će se sastojati iz dva dela: (i) iznos plativ na osnovu uspeha poslovanja Društva (**Naknada za uspeh**) i (ii) naknade za postizanje određenih ciljeva (**Naknada za ciljeve**), kao što je određeno u tekstu ispod.



|  | in accordance with the below provisions. |  |  |
|---|---|---|---|

3.2.7 Provided that the cumulative EBITDA since the Closing of this Agreement is positive, the Performance Based Variable Fee shall be calculated and paid quarterly within 30 (thirty) days after the end of each quarter:

3.2.7 U slučaju da kumulativna EBITDA u periodu od nastupanja Stupanja na snagu bude pozitivna, Naknada za uspeh će biti obračunata i isplaćena kvartalno u roku od 30 (trideset) dana od kraja odgovarajućeg kvartala i to u iznosu od:

3.2.7.1 25% of EBITDA in the last quarter provided that the cumulative EBITDA in the last four quarters was less than USD 20,000,000 (twenty million dollars),

3.2.7.1 25% EBITDA ostvarene u prošlom kvartalu u slučaju da je kumulativna EBITDA u protekla četiri kvartala bila manja od 20.000.000,00 USD (dvadeset miliona američkih dolara).

3.2.7.2 30% of EBITDA in the last quarter provided that the cumulative EBITDA in the last four quarters was between USD 20,000,000 (twenty million dollars) and USD 30,000,000 (thirty million dollars),

3.2.7.2 30% EBITDA ostvarene u prošlom kvartalu u slučaju da je kumulativna EBITDA u protekla četiri kvartala bila između 20.000.000,00 USD (dvadeset miliona američkih dolara) i 30.000.000,00 USD (trideset miliona američkih dolara).

3.2.7.3 35% of EBITDA in the last quarter provided that the cumulative EBITDA in the last four quarters exceeded USD 30,000,000 (thirty million dollars).

3.2.7.3 35% EBITDA ostvarene u prošlom kvartalu u slučaju da je kumulativna EBITDA u protekla četiri kvartala bila veća od 30.000.000,00 USD (trideset miliona američkih dolara).

3.2.8 The Milestone Bonuses shall comprise of:

3.2.8 Naknada za ciljeve će se sastojati od:

3.2.8.1 The Breakeven Bonus of EUR 800,000 (eight hundred thousand euros) after reaching positive EBITDA two months in a row, and

3.2.8.1 Bonusa za profitabilno poslovanje u iznosu od 800.000,00 EUR (osamsto hiljada eura) u slučaju da bude ostvaren pozitivna EBITDA u dva meseca za redom, i

3.2.8.2 The Targeted Minimum Volume Reach Bonus of EUR 700,000 (seven hundred thousand euros) after the first quarter with production higher than 375,000 (three hundred and seventy five thousand) metric tons of conditioned slab.

3.2.8.2 Bonus za obim proizvodnje u iznosu od 700.000,00 EUR (sedamsto hiljada eura) nakon prvog kvartala tokom god bude ostvaren obim proizvodnje veći od 375.00 (trista sedamdeset i pet hiljada) metričkih tona prerađenih slabova.

3.2.9 In addition to the Management Fee outlined in clauses 3.2.4, 3.2.5, 3.2.6, 3.2.7 and 3.2.8, the Service Provider shall be entitled to a bonus fee in case of any privatisation of the Company that occurs within 5 (five) years (or a

3.2.9 Povrh Naknade za upravljanje definisane tačkama, 3.2.4, 3.2.5, 3.2.6, 3.2.7 i 3.2.8 Pružalac usluga će imati pravo na dodatnu naknadu u slučaju uspešnog sprovođenja postupka privatizacije nad Društvom u periodu



| | |
|---|---|
| period of five years plus any additional period of this Agreement agreed to under clause 7.2 hereof) calculated as of the Closing of this Agreement, in the amount equal to 30% of the acquisition price of the Company's stake achieved through such privatisation procedure but in no event lower than USD 10,000,000 (ten million dollars) (the **Privatisation Bonus**). | od pet godina (ili u periodu od pet godina zajedno sa bilo kojim naknadnim produženjem ovog Ugovora ugovorenim u skladu sa stavom 7.2) počev od nastupanja Stupanja na snagu, u iznosu od 30% od prodajne cene udela u Društvu koja bude postignuta u predmetnom postupku privatizacije, ali ni u kom slučaju manje od 10.000.000,00 USD (deset miliona američkih dolara) (**Privatizacioni bonus**). |

3.2.10 The Service Provider shall not be entitled to reimbursement of any expenses relating to or arising out of the provision of the Management Services. For the avoidance of any doubt, the remuneration stipulated by clause 3.2.4, 3.2.5, 3.2.6, 3.2.7, 3.2.8 and 3.2.9 shall cover all expenses and costs of the Service Provider as well as Consultants and two members of the Supervisory Board nominated by the Service Provider under this Agreement.

3.2.10 Pružalac usluga neće imati pravo na naknadu bilo kojih troškova u vezi sa ili koji nastanu kao rezultat pružanja Usluga upravljanja. Kako bi se izbegla svaka sumnja, Ugovorne strane su saglasne da Naknada za upravljanje definisana u tačkama 3.2.4, 3.2.5, 3.2.6, 3.2.7, 3.2.8 i 3.2.9 uključuje naknadu svih troškova koje budu snosili Pružalac usluga kao i Savetnici i dva člana Nadzornog odbora koji su predloženi od strane Pružaoca usluga u skladu sa ovim Ugovorom.

3.2.11 The Auditor shall assess whether the Service Provider as well as all persons engaged, nominated or seconded by the Service Provider to the Company pursuant to this Agreement have reached the KPIs as scheduled by the Business Plan.

3.2.11 Revizor će biti ovlašćen da proceni da li je Pružalac usluga, kao i sva lica angažovana, imenovana ili upućena na rad u Društvo od strane Pružaoca usluga u skladu sa ovim Ugovorom, dostigli KIP u skladu sa Poslovnim planom.

3.2.12 The Auditor appointed pursuant to clause 2.3.8 hereof shall remain for the entire Term of this Agreement, unless replaced by the Supervisory Board by the Qualified majority vote. In such case the new Auditor shall be nominated by the same decision by which the previous Auditor was replaced and the new Auditor shall be one of the members of the Big 4 group of accountants who does not have a conflict of interest in this matter.

3.2.12 Revizor imenovan u skladu sa tačkom 2.3.8 će obavljati funkciju tokom celokupnog Trajanja Ugovora, osim ukoliko ne bude smenjen odlukom Nadzornog odbora donetom Kvalifikovanom većinom. U tom slučaju novi Revizor će biti imenovan istom odlukom kojom je prethodni Revizor smenjen i takav Revizor će biti izabran iz „Velike četvorke revizora" (eng. – *Big 4 group*) i neće biti u sukobu interesa povodom u pogledu obavljanja ove funkcije.

3.2.13 The Company shall bear all expenses, fees and any other costs relating to or arising from of the services provided by the Auditor.

3.2.13 Društvo će snositi sve naknade i druge troškove koji nastanu u vezi sa i kao rezultat usluga Revizora.



| 3.3 **Management responsibilities** | 3.3 **Upravljačke dužnosti** |
|---|---|
| 3.3.1 When fulfilling its management responsibilities, the Service Provider shall itself or through the Consultants and members of the Supervisory Board appointed by the Service Provider or based on its binding nomination: | 3.3.1 Tokom obavljanja upravljačkih dužnosti, Pružalac usluga će sam ili posredstvom Savetnika i članova Nadzornog odbora imenovanih od strane Pružaoca usluga preduzimati sledeće poslove: |
| 3.3.1.1 keep the Supervisory Board informed when fulfilling its responsibilities and take into consideration the advice of the Supervisory Board; | 3.3.1.1 izveštavati Nadzorni odbor o obavljanju svojih dužnosti i pri obavljanju istih postupati u skladu sa uputstvima Nadzornog odbora; |
| 3.3.1.2 devote sufficient attention and resources in order to perform its role in accordance with the standards set forth in this Agreement; | 3.3.1.2 primeniti odgovarajuću pažnju i resurse, kao i sva potrebna sredstva kako bi obavio svoje dužnosti u skladu sa standardima predviđenim ovim Ugovorom; |
| 3.3.1.3 manage the Company and its Affiliates in accordance with the Governing Law; | 3.3.1.3 upravljati Društvom i sa Povezanim licima Društva u skladu sa Merodavnim pravom; |
| 3.3.1.4 in the ordinary course of business make decisions and take actions that are consistent with the operation and management of the Company as a prudent profit-oriented enterprise, all in accordance with the AoA and the Business Plan; | 3.3.1.4 donositi odluke i preduzimati poslove koji spadaju u redovno poslovanje Društva koji su u skladu sa obavljanjem privredne delatnosti Društvom, kao pravnim licem koje obavlja delatnost u cilju sticanja dobiti, a sve u skladu sa OA i Poslovnim planom; |
| 3.3.1.5 develop within the framework of the Business Plan and for the benefit of the Company any synergies and cost savings that may arise between the Company and any operations of the Service Provider and its Affiliates; | 3.3.1.5 ostvariti, u meri u kojoj je to dozvoljeno odredbama Poslovnog plana, u interesu Društva svako zajedničko delovanje u cilju povećanja efikasnosti i smanjenje troškova koje može biti postignuto ostvarivanjem poslovne saradnje između Društva i Pružaoca usluga kao i sa Povezanim licima Pružaoca usluga u bilo kojoj oblasti poslovanja; |
| 3.3.1.6 promote the image, reliability and quality of the Company; | 3.3.1.6 promovisati ugled, pouzdanost i kvalitet dobara i usluga Društva; |
| 3.3.1.7 comply with all of the provisions of this Agreement (including clause 3.6 (Reserved Matters), 4.2 (Related Party Arrangements) and 4.3 (protection against self-dealing), all applicable provisions of the AoA, Business Plan and Governing Law; and | 3.3.1.7 u potpunosti se ponašati u skladu sa odredbama ovog Ugovora (uključujući stav 3.6 (Isključive nadležnosti), 4.2 (Poslovi sa Povezanim licima) i 4.3 (zaključivanje poslova u slučaju postojanja ličnog interesa)) kao i svim obavezujućim odredbama OA, |



Poslovnog plana i Merodavnog prava; i

3.3.1.8 report to the Supervisory Board on its activities on the regular monthly basis, or even more frequently if reasonably requested so by the Supervisory Board.

3.3.1.8 redovno na mesečnom nivou izveštavati Nadzorni odbor o preduzetim poslovima ili u kraćim vremenskim intervalima ukoliko Nadzorni odbor to zatraži iz opravdanih razloga.

### 3.4 Management power and authority of the CEO

3.4.1 The Service Provider in the capacity of the CEO of the Company shall be in charge for the daily business of the Company. However, the power of the Service Provider to represent the Company in the capacity of the CEO shall be limited by mandatory co-signature of the OFGR. For avoidance of any doubt, for any and all matters and/or transactions the CEO shall be entitled to represent the Company only jointly, with co-signature of the OFGR.

### 3.4 Upravljačka ovlašćenja generalnog direktora

3.4.1 Pružalac usluga, u svojstu generalnog direktora Društva će biti zadužen za obavljanje radnji okviru redovnog poslovanja Društva. Međutim, ovlašćenje Pružaoca usluga da u svojstvu generalnog direktora Društva biće ograničeno supotpisom direktora za odnose sa državnim organima i organizacijama Društva. U cilju izbegavanja svake sumnje, generalni direktor će uz supotpis direktora za odnose sa državnim organima i organizacijama Društva biti ovlašćen da zastupa Društvo u svim pitanjima.

3.4.2 This limitation shall be implemented in a manner closely defined in the AoA and shall be registered in the Business Registry Agency.

3.4.2 Ograničenje supotpisom će biti primenjeno na način određen odredbama OA i biće registrovano u Agenciji za privredne registre.

3.4.3 The Parties confirm however that the role of the OFGR shall be to control the work of the CEO and not to actively manage the company. Consequently the OFGR shall not take part in active management of the Company and his rights shall be essentially treated as a veto right on decisions, actions and proposals made by the CEO.

3.4.3 Ugovorne strane se ovim putem saglašavaju da će uloga direktora za odnose sa državnim organima i organizacijama biti da nadzire rad generalnog direktora Društva a ne da aktivno obavlja poslove upravljanja Društvom. Shodno tome, direktor za odnose sa državnim organima i organizacijama neće aktivno učestvovati u upravljanju Društvom i njegova prava će zapravo biti smatrana pravom veta odluke, radnje i predloge generalnog direktora Društva.

3.4.4 In case when the OFGR does not approve a decision or a proposal of the CEO in matters where co-signature of the OFGR is required, the CEO has the right to call a meeting of the Supervisory Board. The Supervisory Board shall, if invited by the CEO, have a formal meeting and pass a decision

3.4.4 U slučaju da direktor za odnose sa državnim organima i organizacijama ne odobri odluku ili predloga generalnog direktora u kada je za to potreban supotpis direktor za odnose sa državnim organima i organizacijama, generalni direktor će imati pravo da sazove sednicu

25



|  | by which the proposal or the decision of the CEO will be by a Qualified majority vote decision of the Supervisory Board finally approved or rejected within 3 (three) days from the day when the CEO has called for a meeting. The subject period of 3 (three) days may be extended but only by a Qualified majority vote decision of the Supervisory Board. |  | Nadzornog odbora. Nadzorni odbor će, po pozivu generalnog direktora, održati sednicu i doneti Kvalifikovanom većinom odluku kojom će predlog ili odluku generalnog direktora konačno usvojiti ili odbaciti u roku od 3 (tri) dana od dana kada generalni direktor uputi poziv za sednicu. Isti period od 3 (tri) dana može biti produžen samo odlukom Nadzornog odbora donetom Kvalifikovanom većinom. |
|---|---|---|---|
| 3.4.5 | If the required by a Qualified majority vote decision of the Supervisory Board cannot be reached within the time limits from clause 3.4.4 above the Service Provider has the right to invite the Auditor to determine if the proposed decision shall be considered as reasonable. | 3.4.5 | Ukoliko potrebna odluka ne bude doneta od strane Nadzornog odbora Kvalifikovanom većinom u roku određenom u tački 3.4.4 iznad, Pružalac usluga će imati pravo da pozove Revizora kako bi isti ocenio da li je predložena odluka razumna. |
| 3.4.6 | The Auditor shall have 30 (thirty) days to determine if the proposed decision was reasonable. If the Auditor determines that the decision proposed by the Service Provider objectively could be treated as a reasonable proposal, the Supervisory Board shall have the right to amend its previous decision by the Simple Majority vote within 3 (three) Business Days after the position of the Auditor was supplied to the Parties. If the Supervisory Board does not change its previous decision and the proposal of the Service Provider remains unapproved despite the expressed opposite position of the Auditor, the Service Provider only shall have the right to terminate this Agreement by a unilateral notice. In such case the Company shall pay to the Service Provider the Termination Fee. | 3.4.6 | Revizor će imati rok od 30 (trideset) dana da proceni da li je predložena odluka razumna. Ukoliko Revizor proceni da se predložena odluka objektivno može smatrati razumnom, Nadzorni odbor će imati pravo da izmeni prethodno donetu odluku novom koju će doneti Prostom većinom u roku od 3 (tri) Radna dana od kada je odluka Revizora uredno dostavljena Ugovornim stranama. Ukoliko Nadzorni odbor ne izmeni na taj način svoju prethodnu odluku i predlog Pružaoca usluga ne bude usvojen i pored izričitog pozitivnog mišljenja Revizora, Pružalac usluga će imati isključivo pravo da jednostranom izjavom volje raskine ovaj Ugovor. U tom slučaju, Društvo će Pružaocu usluga isplatiti Naknadu za raskid Ugovora. |
| 3.4.7 | Notwithstanding the limitations in representation powers as determined above the Service Provider shall have the right to make the following business decisions without co-signature of the OFGR: | 3.4.7 | Bez obzira na ograničenja u zastupanju određena odredbama iznad, Pružalac usluga će imati pravo da donosi sledeće odluke bez supotpisa direktora za odnose sa državnim organima i organizacijama: |
| | (a)  Spot sale of the Company's products as long as the sales | | (a)  Zaključuje jednokratne ugovore o prodaji (eng. – Spot sale) |



price is above the minimum that will be set by the decision of the Supervisory Board on the monthly basis;

(b) Accept customer complaints related to sold Company products up to the amount of EUR 5,000 (five thousands euros); and

(c) Any undertakings necessary for the purposes of resolution of an emergency situation that may occur related to the Company where it being understood that such decision must be approved as soon as possible by the OFGR or Supervisory Board of the Company.

3.4.8 During the Term the Service Provider shall have, and is hereby vested with management authority over, and responsibility for, the ordinary course of business and affairs of the Company in accordance with the terms of this Agreement, the AoA and the Governing Law.

3.4.9 In all matters over which the Service Provider exercises authority, the RoS and the Company agree that the Service Provider shall not be required to refer such matters to or seek the approval at any meeting or from the Supervisory Board unless otherwise required by the Governing Law, the AoA or the terms of this Agreement, and that such matters shall be validly conducted without such reference or consent, notwithstanding the Service Provider's status as a non-shareholder in the Company.

3.4.10 Without limiting the generality of the matters specified in clause 3.4.5, the Service Provider's authority and responsibility shall cover (but not be limited to) the following matters, subject to the AoA, this Agreement and the Governing Law:

3.4.10.1     the conduct of day to day

---

ukoliko je prodajna cena viša od minimalne cene određene odlukom Nadzornog odbora na mesečnoj bazi;

(b) Prima prigovore poslovnih partnera u vezi sa prodatim proizvodima Društva do vrednosti od 5.000 EUR (pet hiljada eura); i

(c) Preduzima sve poslove potrebne za prevazilaženje bilo koje hitne situacije koja može nastati u vezi sa Društvom uz napomenu da isti posao mora biti u najkraćem roku odobren od strane direktora za odnose sa državnim organima i organizacijama ili Nadzornog odbora Društva.

3.4.8 U toku Trajanja Ugovora Pružalac usluga se ovim putem ovlašćuje da preduzima poslove, te mu se predaje odgovornost za preduzimanje poslova koji spadaju u redovno poslovanje Društva u skladu sa uslovima određenim ovim Ugovorom, OA i Merodavnim pravom.

3.4.9 RS i Društvo su saglasni da Pružalac usluga neće biti u obavezi da konsultuje niti da traži odobrenje od bilo kog organa niti od Nadzornog odbora za preduzimanje poslova u bilo kojoj oblasti u kojoj su Pružaocu usluga poverena ovlašćenja osim ukoliko suprotno nije predviđeno Merodavnim pravom, OA ili odredbama ovog Ugovora i da će isti poslovi biti punovažni bez potrebe davanja gore nabrojanih odobrenja bez obzira na činjenicu da Pružalac usluga nije član Društva.

3.4.10 Bez obzira na opšti karakter odredbe tačke3.4.5, Pružalac usluga će imati ovlašćenje i odgovornost za (ali bez ograničenja) preduzimanje sledećih poslova, a u skladu sa OA, ovim Ugovorom i Merodavnim pravom:

3.4.10.1     preduzimanje poslova koji

27



management of the Company which shall include, but shall not be limited to sales, purchase of raw materials and other semi-finished products or waste, marketing of the Company products, signing of transportation agreements, maintaining relations with suppliers and service providers;

3.4.10.2    preparing strategic plans (comprising budget, capital expenditure and investment plans) for the Supervisory Board approval that adhere to and further implement the principles and KPIs included in the Business Plan and this Agreement, and implementing their terms once so approved;

3.4.10.3    management of employees of the Company and determination of compensation, bonus levels, functions, transfers, training, demotions, promotions, disciplinary action, dismissals, hiring and employee benefits with respect to the employees of the Company, in accordance with the Business Plan. This authorisation shall include the power of the CEO to change the status of all current managers of the Company and convert their position into non-managerial position as it deems appropriate;

3.4.10.4    preparation of an annual business report for submission to the Supervisory Board (which business report shall review the Company's performance and prospects in terms of results of operations, yields, operating expenditures, debt service and other non-operational expenditures, cash flows, business expansion and rationalisation, competitive situation, marketing, management information systems, employee performance, staffing requirements, extraordinary events and other relevant matters);

spadaju u redovno poslovanje Društva, što uključuje ali se ne ograničava na, prodaju, kupovinu sirovina i drugih poluproizvoda ili otpada, promovisanje proizvoda Društva, zaključivanja ugovora o prevozu, održavanja odnosa sa dobavljačima i pružaocima usluga;

3.4.10.2    pripremanje strateških planova (koji uključuju budžet, planove velikih rashoda i kapitalnih investicija) koje je potrebno da usvoji Nadzorni odbor, te koji su u skladu sa KIP ustanovljenim Poslovnim planom i ovim Ugovorom, te da će iste u potpunosti primenjivati kada budu usvojeni;

3.4.10.3    izdavanjem naloga zaposlenima u Društvu i određivanje zarada, visine podsticaja, radnog mesta, načina plaćanja, obuke, premeštaja na niže plaćeno radno mesto, unapređenja, disciplinskih postupaka, otkaza, zasnivanja radnog odnosa i određivanja drugih pogodnosti zaposlenih u Društvu, a u skladu sa Poslovnim planom. Ovo ovlašćenje će uključiti ovlašćenje generalnog direktora Društva da na osnovu sopstvene procene donese odluku o promeni trenutnog statusa lica sa upravljačkim i drugim sličnim ovlašćenjima u Društvu tako da ista lica više ne poseduju takva ovlašćenja;

3.4.10.4    pripremanje godišnjih izveštaja o poslovanju Društva radi podnošenja istih Nadzornom odboru (koji će između ostalog uključivati pregled poslovnog uspeha i očekivanog rasta Društva u pogledu rezultata poslovnih aktivnosti, prihoda, operativnih troškova, namirenja postojećih dugovanja i drugih neoperativnih troškova, novčanih tokova, razvoja i racionalizacije poslovanja, stanja konkurencije, marketinga, upravljanja informacionim sistemima, ocenom rada zaposlenih, potrebe zapošljavanja novih lica, nepredviđenim događajima i drugim relevantnim pitanjima);



3.4.10.5    provision of access to the Company to new technologies and improvement of the technological capabilities of the Company and the know-how and skills of its employees;

3.4.10.6    direct participation in negotiation and execution of agreements by the Company, including agreements relating to the incurrence by the Company of indebtedness, lease payments and other obligations or acquisition, by purchase or otherwise, of equipment, spare parts and technical and other services;

3.4.10.7    the Service Provider agrees to use its best efforts to identify and/or deploy Serbian nationals for key positions within the Company;

3.4.10.8    bringing into effect actions and preventative measures to ensure that the Company is operated as a safe and reliable enterprise and the equipment used by the Company is maintained in compliance with the Governing Law, manufacturers' service bulletins and warranty conditions.

3.4.11 The Consultants nominated by the Service Provider (as may be amended from time to time in line with this Agreement), shall be engaged by the Service Provider for the purposes of managing of various functions of the Company including but not limited to managing sectors of production and maintenance; procurement; sales; finances, accountancy and taxes and financing of investments through use of EU Funds.

3.4.12 In case that, for any reason, any of the Consultants or persons nominated to the Supervisory Board cease their engagement in rendering the Management Services, the Service Provider shall be obliged to replace

---

3.4.10.5    omogućavanje Društvu pristupa novim tehnologijama i unapređenje postojećih tehničkih kapaciteta Društva kao i stručnih znanja, know-how i veština zaposlenih u Društvu;

3.4.10.6    direktno učestvovanje u pregovorima i zaključivanju ugovora od strane Društva, uključujući ugovore koji se odnose na preuzimanje novčanih obaveza, zaključivanje ugovora o zakupu i preuzimanje drugih obaveza ili kupovinom ili sticanjem na neki drugi način opreme, rezervnih delova kao i tehničkih ili drugih usluga;

3.4.10.7    Pružalac usluga se obavezuje da će preduzeti sve razumne mere kako bi pronašao i/ili zaposlio državljane Republike Srbije na ključnim upravljačkim radnim mestima u Društvu;

3.4.10.8    preduzeti sve potrebne, uključujući i preventivne, mere kako bi osigurao da Društvo obavlja privrednu delatnost u skladu sa svim standardima bezbednosti, kao i da se oprema koja se koristi u Društvu održava u skladu sa Merodavnim pravom i uslovima iz dokumentacije vezane za garancije za ispravno funkcionisanje kupljene robe.

3.4.11 Savetnici imenovani od strane Pružaoca usluga (koji mogu biti s vremena na vreme promenjeni) će biti angažovani od strane Pružaoca usluga na različitim funkcijama u Društvu uključujući ali se ne ograničavajući na upravljačka mesta u sektorima za proizvodnju i održavanje; nabavke; prodaju; finansije, računovodstvo i poreska pitanja kao i finansiranje projekata iz fondova EU.

3.4.12 U slučaju da, iz bilo kog razloga, bilo koji od Savetnika predloženih ili članova Nadzornog odbora predloženih od strane Pružaoca usluga bude razrešeno funkcije ili na drugi način prestane da obavlja funkciju radi

29



such a person with a person that fulfils the conditions set out in clause 3.2.2 within 30 (thirty) days. Such an appointment shall be subject to approval of the Supervisory Board or the RoS in case of members of the Supervisory Board. Such an appointment shall not require the amendment of this Agreement as set out in the clause 15.5.

pružanja Usluga upravljanja, Pružalac usluga se obavezuje da umesto takvog lica predloži drugo lice koje ispunjava uslove predviđene stavom 3.2.2 u roku od 30 (trideset) dana od dana prestanka radnog ili drugog sličnog odnosa. Takav predlog će biti uslovljeno odobrenjem Nadzornog odbora ili RS u slučaju predlaganja lica za člana Nadzornog odbora. U slučaju takvog imenovanja neće biti potrebne izmene i dopune ovog Ugovora po postupku predviđenim stavom 15.5.

3.4.13 When exercising the authority granted by, and adhering to the responsibilities imposed by this Agreement, the Service Provider will act in full compliance with the Governing Law and the AoA.

3.4.13 Pružalac usluga će se u vršenju ovlašćenja ustanovljenih ovim Ugovorom, u svemu pridržavati svojih obaveza predviđenih ovim Ugovorom kao i normi Merodavnog prava i OA.

3.5  **Supervisory Board**

3.5  **Nadzorni odbor**

3.5.1 Decisions of the Supervisory Board shall be made by the Qualified majority vote unless explicitly stated otherwise in the AoA or in this Agreement.

3.5.1 Odluke Nadzornog odbora će biti donete Kvalifikovanom većinom osim ukoliko drugačije nije predviđeno odredbama OA ili ovog Ugovora.

3.5.2 If a decision of the Supervisory Board cannot be reached in respect of an item that is officially on the agenda of the Supervisory Board's meeting, as the Qualified majority vote or the quorum set by the AoA cannot be achieved, the Party whose representative has proposed the subject item can invite the Auditor to determine if the proposed decision shall be considered as reasonable.

3.5.2 Ukoliko odluka Nadzornog odbora o bilo kom pitanju koje je na zvaničnom dnevnom redu sednice istog ne može biti iz razloga što potrebna Kvalifikovana većina ili kvorum određen u OA ne mogu biti obezbeđeni, Ugovorna strana čiji je predstavnik predložio takvu odluku može pozvati Revizora da odluči da li se takav predlog može smatrati razumnim.

3.5.3 The Auditor shall have 30 (thirty) days to determine if the proposed decision was reasonable.

3.5.3 Revizor će imati 30 (trideset) dana da odluči da li se predlog može smatrati razumnim.

3.5.4 If the proposed decision was put on the agenda of the Supervisory Board by the member of the Supervisory Board nominated as representative of the RoS and such proposal was declared by the Auditor as reasonable the Supervisory Board shall vote again on the proposed decision but now the decision can be made by the Simple Majority vote within 7 (seven) Business Days from the day of receiving of the Auditor's

3.5.4 Ukoliko je takav predlog uključen u dnevni red sednice na inicijativu člana Nadzornog odbora imenovanog u svojstvu predstavnika RS i ukoliko je Revizor procenio da je takav predlog razuman Nadzorni odbor će ponovo glasati o predlogu dok se odluka u tom slučaju može doneti Prostom većinom u roku od 7 (sedam) Radnih dana od dana kada je uredno dostavljena odluka Revizora,



opinion.

3.5.5    If the proposed decision was put on the agenda of the Supervisory Board by the member of the Supervisory Board appointed as representative of the Service Provider and such proposal was declared by the Auditor as reasonable, the Supervisory Board shall have right to obey to such Auditor's opinion and pass the respective decision by the Simple majority vote within 7 (seven) Business Days from the day of receiving of the Auditor's opinion, otherwise the Service Provider shall have the right to terminate this Agreement and the Company shall pay to the Service Provider the Termination Fee.

3.5.5    Ukoliko je takav predlog uključen u dnevni red sednice na inicijativu člana Nadzornog odbora imenovanog u svojstvu predstavnika Pružaoca usluga i ukoliko je Revizor procenio da je takav predlog razuman Nadzorni odbor će imati pravo da uskladi svoju odluku sa odlukom Revizora i donese predmetnu odluku Prostom većinom u roku od 7 (sedam) Radnih dana od dana kada je uredno dostavljena odluka Revizora, dok će u slučaju da takva odluka ne bude doneta Pružalac usluga imati pravo da raskine ovaj Ugovor a Društvo će u tom slučaju Pružaocu usluga isplatiti Naknadu za raskid Ugovora.

### 3.6    Reserved Matters

### 3.6    Isključive nadležnosti

3.6.1    The Service Provider shall in addition to the OFGR co-signature seek approval of the Supervisory Board for any of the following actions:

3.6.1    Pružalac usluga će pored supotpisa direktora za odnose sa državnim organima i organizacijama biti dužan da traži odobrenje Nadzornog odbora za preduzimanje bilo kojih od sledećih poslova:

3.6.1.1 the establishment and delegation of any powers or duties of the CEO to any person other than a Consultant or a committee consisted of persons other than Consultants or the establishment or modification of the rules governing such committee;

3.6.1.1 ustanovljavanje ili prenos bilo kog ovlašćenja, nadležnosti ili dužnosti generalnog direktora na bilo koje lice osim Konsultanata ili bilo koju komisiju ili drugi organ koji čine lica osim Konsultanata ili izmeniti na bilo koji način pravila koja regulišu rad takve komisije ili organa;

3.6.1.2 any Non-Permitted Deviation from the Business Plan;

3.6.1.2 preduzeti Nedopušteno odstupanje od Poslovnog plana;

3.6.1.3 the establishment (including by acquisition of shares) or termination of, or sale of equity interests in, any subsidiary of the Company;

3.6.1.3 osnivanje (uključujući i sticanje udela ili akcija), likvidaciju, ili prodaju zavisnih društava Društva ili udela, akcija ili osnivačkog kapitala istih;

3.6.1.4 the commencement, pursuit, defence, or settlement of any claim or legal or arbitration proceeding;

3.6.1.4 pokretanje, preduzimanje radnji u ili zaključivanje poravnanja povodom bilo kojeg potraživanja ili drugog zahteva ili u sudskom, arbitražnom ili drugom postupku:

     a.    in which the Company and the

     a.    u kome su Društvo ili RS stranke

31



| | | | |
|---|---|---|---|
| | RoS are parties as co-plaintiffs or co-defendants; or | | u postupku ili suparničari; ili |
| b. | there is a reasonable possibility that the proceedings could result in a material adverse effect on the Company if determined against it. | b. | ukoliko postoji verovatnoća nastupanja Značajne štete po Društvo ukoliko se predmetni postupak ne okonča u njegovu korist; |
| 3.6.1.5 | the adoption or amendment of procurement policies for the Company and any subsidiary setting out procurement procedures and authority limits for executive management. | 3.6.1.5 | usvajanje novih ili izmene postojećih pravila o organizaciji nabavki u Društvu ili bilo kom zavisnom društvu istog koja regulišu postupak nabavki kao i ovlašćenja lica i organa povodom istih; i |

3.7 **Implementation by the RoS**

3.7 **Primena ovog Ugovora od strane RS**

3.7.1 The RoS shall, so far as it lies within its power (in its capacity as the sole shareholder in the Company), procure that a quorum is present at all duly convened meetings of the Supervisory Board and any other meetings and procure that the Officers appointed on its nomination will support and implement all valid decisions of the Supervisory Board and any other meetings for the development and conduct of the Business as contemplated in this Agreement.

3.7.1 RS će, u obimu svojih ovlašćenja (u svojstvu jedinog člana Društva), obezbediti postojanje kvoruma na svim sednicama Nadzornog odbora i na sednicama svih drugih organa, kao i da će Direktori imenovani na predlog iste glasati za i primeniti sve punovažne odluke Nadzornog odbora i bilo kog drugog organa Društva u vezi sa razvojem i obavljanjem Privrednih delatnosti kao što je predviđeno ovim Ugovorom.

3.7.2 The RoS confirms that the Bidder and/or the Service Company and/or any of their Affiliates will have the right to participate in any future privatisation procedure of the Company.

3.7.2 RS ovim putem potvrđuje da će Ponuđač i/ili Pružalac usluga i/ili bilo koje Zavisno lice istih imati pravo da učestvuju u bilo kom postupku privatizacije Društva.

3.8 **Duties towards the Company**

3.8 **Posebne dužnosti prema Društvu**

3.8.1 The Service Provider shall owe the following duties to the Company:

3.8.1 Pružalac usluga će imati sledeće posebne dužnosti prema Društvu:

3.8.1.1 Duty of care (within the meaning of the articles 63 and 64 of the Serbian Companies Act);

3.8.1.1 dužnost pažnje (u skladu sa značenjem članova 63 i 64 Zakona o privrednim društvima Republike Srbije);

3.8.1.2 Duty to report on existence of personal interest (within the meaning of the articles 65 to 68 of the Serbian Companies Act);

3.8.1.2 dužnost prijavljivanja poslova i radnji u kojima postoji lični interes (u skladu sa značenjem članova 65 i 68 Zakona o privrednim društvima Republike Srbije);



| | |
|---|---|
| 3.8.1.3 Duty to avoid conflicts of interest (within the meaning of the articles 69 to 71 of the Serbian Companies Act); | 3.8.1.3 dužnost izbegavanja sukoba interesa (u skladu sa značenjem članova 69 i 71 Zakona o privrednim društvima Republike Srbije); |
| 3.8.1.4 Duty of confidentiality (within the meaning of the articles 72 to 74 of the Serbian Companies Act); and | 3.8.1.4 dužnost čuvanja poslovne tajne (u skladu sa značenjem članova 72 i 74 Zakona o privrednim društvima Republike Srbije); i |
| 3.8.1.5 Non-compete duty (within the meaning of the articles 75 to 76 of the Serbian Companies Act). | 3.8.1.5 dužnost poštovanja zabrane konkurencije (u skladu sa značenjem članova 75 i 76 Zakona o privrednim društvima Republike Srbije). |

| | |
|---|---|
| **4   SYNERGIES AND RELATED PARTY ARRANGEMENTS** | **4.   ZAJEDNIČKO DELOVANJE I POSLOVI SA POVEZANIM LICIMA** |
| 4.1   Subject to clause 6 and the Business Plan and all applicable legal and regulatory requirements and approvals, the Service Provider shall use its best efforts in accordance with the Diligent Business Person Standard to foster, in the interests of the Company, a cooperation between the Business and the business of the Service Provider, that would result in reduction of costs, better utilization of available assets, access to new business opportunities or any other benefits for the Company, by means of: | 4.1   Osim ukoliko suprotno nije predviđeno članom 6, Poslovnim planom ili bilo kojim zakonskim i regulatornim zahtevima ili odobrenjima, Pružalac usluga će preduzeti sve potrebne mere, primenjujući Pažnju dobrog privrednika kako bi razvio, u interesu Društva, poslovnu saradnju između Društva i Pružaoca usluga u oblasti Privrednih delatnosti i privrednih delatnosti Pružaoca usluga, koja će za rezultat imati smanjenje troškova, viši nivo iskorišćenosti dostupnog kapitala, otvaranje novih poslovnih prilika i drugih pogodnosti za Društvo, i to: |
| 4.1.1   using its relationships with third party vendors and service providers to obtain for the benefit of the Company goods and services required by the Company on terms and conditions that are more favourable to the Company than the terms and conditions that would be obtained if the Company procured such goods and services from the market without the involvement of the Service Provider; | 4.1.1   korišćenjem svojih poslovnih odnosa sa nepovezanim dobavljačima i pružaocima usluga kako bi omogućio Društvu da pribavi potrebna dobra i usluge pod uslovima koji su povoljniji za Društvo pod uslova kojima bi ista mogla biti pribavljena na tržištu bez posredovanja Pružaoca usluga; |
| 4.1.2   providing to the Company (directly or through its Affiliates) goods and services required by the Company on terms and conditions that are competitive with, or preferential to, the terms and conditions that would be obtained if the Company procured such goods and services from the market | 4.1.2   putem pružanja Društvu (direktno ili preko Povezanih lica sa Pružaocem usluga) potrebnih dobara i usluga pod uslovima koji su povoljniji za Društvo od uslova pod kojima bi ista mogla biti pribavljena na tržištu bez posredovanja Pružaoca usluga; i |



without the Service Provider as the intermediary; and

4.1.3 using its know-how, business relationships and experience in order to secure to the Company access to new national and international markets.

4.1.3 korišćenjem svog know-how, poslovnih odnosa i iskustva u cilju pružanja Društvu pristupa novim nacionalnim i međunarodnim tržištima.

4.2 The Service Provider recognises that Related Party Arrangements need to be effected on a transparent, arm's length basis and in the best interests of the Company and the Service Provider hereby agrees that, prior to effecting any Related Party Arrangement, the Service Provider shall:

4.2 Pružalac usluga se obavezuje da Poslove sa povezanim licima preduzima na transparentan način, u skladu sa principom „van dohvata ruke" i u najboljem interesu Društva. Pružalac usluga se obavezuje da, pre zaključenja ili preduzimanja Poslova sa povezanim licima:

4.2.1 provide full disclosure of (and provide all supporting documents relating to) such Related Party Arrangement to the Supervisory Board;

4.2.1 o istima u potpunosti obavesti Nadzorni odbor (i dostavi svu dokumentaciju vezanu za iste);

4.2.2 obtain the co-signature of the OFGR (such co-signature not to be unreasonably withheld or delayed); and

4.2.2 pribavi supotpis direktora za odnose sa državnim organima i organizacijama (koji ne sme biti uskraćen ili dat sa zakašnjenjem bez opravdanog razloga); i

4.2.3 check whether there are any legal or regulatory requirements that might prevent such arrangements, generally or only in certain territories or circumstances, notify the Supervisory Board of the existence of any such requirement. The Service Provider shall not enter into any such agreement before the said requirements are met.

4.2.3 utvrditi da li postoje bilo kakvi zakonska ili regulatorna ograničenja koja bi mogla takve poslove učiniti nedozvoljenim, uopšte ili samo na određenim teritorijama ili pod određenim okolnostima, i obavestiti Nadzor odbor o istim zahtevima. Pružalac usluga se obavezuje da neće zaključiti niti preduzeti iste poslove pre nego što gore spomenuti zahtevi ne budu u potpunosti ispunjeni.

4.3 The Service Provider shall avoid actions that involve personal interest (as defined under article 65 paragraph 3 of the Serbian Companies Act) or any other impropriety and, in particular, without limitation, shall not directly or indirectly effect any arrangement, transaction or agreement that has the effect of diverting any opportunity of the Company or its Group Companies to maintain and develop Business or other operations.

4.3 Pružalac usluga se obavezuje da ne zaključuje niti da preduzima poslove u kojima postoji lični interes ili drugi sličan nepriklan ili nedozvoljen interes, a naročito, ali ne ograničavajući se na, da posredno ili neposredno zaključuje ugovore ili preduzima druge pravne poslove koji bi onemogućili Društvo ili Grupu društava istog da održi ili unapredi Privredne delatnosti ili druge oblasti poslovanja.



| | |
|---|---|
| **5      PAYMENTS** | **5.      PLAĆANJA** |
| **5.1   Costs** | **5.1   Način plaćanja** |
| 5.1.1   The Management Fees as regulated by 3.2.4, 3.2.5, 3.2.6, 3.2.7, 3.2.8 and 3.2.9 shall be reimbursed as stipulated in clause 3.2 and invoiced to the Company. | 5.1.1   Naknada za upravljanje određena u tačkama 3.2.4, 3.2.5, 3.2.6, 3.2.7, 3.2.8 and 3.2.9 će biti plaćena na način regulisan u stavu 3.2 i fakturisana Društvu. |
| 5.1.2   All payments required by this Agreement to be made to the Service Provider shall be made by the Company by means of bank transfer in RSD, in accordance with the median exchange rate of the National Bank of Serbia on the day of payment to the Service Provider's account RSD 170-30023743000-98, as set out in the invoice. | 5.1.2   Sva plaćanja koja na osnovu ovog Ugovora bude potrebno izvršiti Pružaocu usluga, Društvo će izvršiti putem bankarskog transfera u RSD, u skladu sa srednjim kursom Narodne Banke Srbije na dan uplate na račun Pružaoca usluga RSD 170-30023743000-98, na način određen fakturom. |
| 5.1.3   Invoices referring to the Fixed Fee shall be issued monthly and shall be payable by the Company in accordance with terms of this Agreement. | 5.1.3   Fakture naslovljene na Fiksnu naknadu će biti izdavane jednom mesečno i biće plative od strane Društva na način predviđen ovim Ugovorom. |
| 5.1.4   Invoices referring to the Variable Fee shall be issued and shall be payable in accordance with terms of this Agreement. | 5.1.4   Fakture naslovljene na Varijabilni deo naknade će biti izdavane i plative na način predviđen odredbama ovog Ugovora. |
| 5.1.5   If the OFRG has any objections in respect of an invoice issued by the Service Provider and refuses to sign off its payment, it shall state such objections in writing within 5 (five) Business Days after the invoice was issued. | 5.1.5   Ukoliko direktor za odnose sa državnim organima i organizacijama želi da uloži prigovor na bilo koju fakturu izdatu od strane Pružaoca usluga i odbije da da svoj supotpis na isplatu po istoj isti prigovor će uputiti pismenim putem u roku od 5 (pet) Radnih dana po izdavanju predmetne fakture. |
| 5.1.6   In a situation when an invoice is challenged by the OFRG, all Parties to this Agreement shall without delay have a joint meeting in order to try to resolve the outstanding issue. | 5.1.6   U slučaju da direktor za odnose sa državnim organima i organizacijama uloži prigovor na fakturu, predstavnici svih Ugovornih strana će bez odlaganja održati sastanak u cilju rešavanja ovakvog problema. |
| 5.1.7   If within 15 (fifteen) Business Days after the invoice is issued no agreement can be reached between the Parties, the Service Provider may invite the Auditor to determine if the invoice was issued in accordance with the terms of this Agreement. | 5.1.7   Ukoliko u roku od 15 (petnaest) Radnih dana nakon izdavanja fakture ne bude postignut sporazum Ugovornih strana, Pružalac usluga će biti ovlašćen da pozove Revizora kako bi isti odlučio da li je faktura izdata u skladu sa odredbama ovog Ugovora. |



5.1.8 The determination by the Auditor shall be made within 30 (thirty) days and shall be final. If the Auditor finds that the invoice was not issued properly, it will state which should be correct amount of the issued invoice and the Service Provider should issue a new invoice with the figure set by the Auditor.

5.1.9 Such invoice would be payable immediately and the Company would not have the right to object to it.

5.2 **Invoicing and Late payment**

5.2.1 In the event the Company does not pay any amount due within the applicable time frame, the Service Provider may charge interest at the rate of the official legal default interest rate in line with the Governing Law.

6 **WARRANTIES AND COVENANTS**

6.1 **Authority and other warranties and covenants**

6.1.1 RoS represents and warrants to the Service Provider in respect of the Company and the Company and the Service Provider and Bidder each represents and warrants to the other as follows:

6.1.1.1 it is a duly incorporated and validly existing corporations under the laws of their respective country of origin;

6.1.1.2 subject to grant of the Regulatory Approvals, hold all licences, certificates and permits from all competent authorities necessary to perform its obligations under this Agreement, and has the requisite corporate power and authority to enter into, and perform its obligations under, this Agreement; and

6.1.1.3 the execution and delivery of this Agreement, the performance by such Party of its obligations under this Agreement and the consummation by

---

5.1.8 Revizor će odluku doneti u roku od 30 (trideset) dana i ista će se smatrati konačnom. Ukoliko Revizor odluči da faktura nije izdata u skladu sa odredbama ovog Ugovora, odrediće iznos izdate fakture koji je ispravan i Pružalac usluga će izdati novu fakturu sa takvim iznosom.

5.1.9 Faktura iz tačke iznad će biti plativa odmah i Društvo neće imati pravo prigovora ili žalbe na istu.

5.2 **Fakturisanje i Docnja**

5.2.1 U slučaju da Društvo ne ispuni bilo koju novčanu obavezu u predviđenom roku, Pružalac usluga će imati pravo na zakonsku zateznu kamatu u skladu sa Merodavnim pravom.

6. **IZJAVE I GARANCIJE**

6.1 **Ovlašćenja i druge izjave i garancije**

6.1.1 RS ovim putem potvrđuje Pružaocu usluga u vezi sa Društvom a Društvo, Pružalac usluga i Ponuđač ovim putem potvrđuju da :

6.1.1.1 su osnovana i registrovana u skladu sa pravom država u kojima su osnovana;

6.1.1.2 pod uslovom da im budu izdata Prethodna odobrenja, im izdate sve licence, sertifikati i dozvole od strane odgovarajućih nadležnih organa, a koje su potrebne za izvršenje svih obaveza predviđenih ovim Ugovorom, i da ima odgovarajuća zastupnička i druga ovlašćenja da ovaj Ugovor zaključe i da izvrše sve obaveze određene istim; i

6.1.1.3 zaključenje ovog Ugovora i izvršenje obaveza i transakcija predviđenih istim od strane bilo koje Ugovorne strane ili drugih transakcija predviđenih ovim



36

| | |
|---|---|
| such Party of the transactions contemplated hereby will not contravene any provision of the AoA in the case of the Company and, in the case of the Service Provider its organising documents. | Ugovorom nije u suprotnosti sa OA u slučaju Društva odnosno sa osnivačkim aktom i drugim opštim aktima Pružaoca usluga. |
| 6.1.2 The Company and the RoS represent and warrant to the Service Provider the following: | 6.1.2 Društvo i RS ovim putem potvrđuju Pružaocu usluga da: |
| 6.1.2.1 no circumstances exist or might arise related to the legality of the Company's operations which could have a Material impact on the implementation of the Business Plan. | 6.1.2.1 ne postoje niti mogu nastupiti okolnosti koje proističu iz nezakonitosti poslovanja Društva a koje mogu imati Značajne posledice na primenu Poslovnog plana. |
| 6.1.2.2 After the Closing and throughout the Term of this Agreement none of the Frozen Liabilities shall be enforced against the Company. | 6.1.2.2 nakon nastupanja Stupanja na snagu i tokom celokupnog Trajanja Ugovora ni jedno potraživanje sa Liste zamrznutih obaveza neće biti izvršeno protiv Društva. |
| 6.1.3 The Service Provider and the Bidder represent and warrant to the Company the following: | 6.1.3 Pružalac usluga i Ponuđač ovim putem Društvu potvrđuju da: |
| 6.1.3.1 none of the Consultants or members of the Supervisory Board nominated by the Service Provider have committed any criminal offenses (including, but not limited to any felony, misdemeanour, breach of antitrust or other competition rules) or any other offense that could be classified as such in the appropriate jurisdiction; | 6.1.3.1 ni jedan od Savetnika imenovanih od strane Pružaoca usluga nije učinilo niti osuđeno za bilo koje kršenje krivičnih zakona i drugih sličnih propisa (uključujući, ali se ne ograničavajući na, krivična dela, prekršaje, privredne prestupe ili povrede prava konkurencije) ili drugu radnju koja može kao takva biti okarakterisana u skladu sa merodavnim pravom jurisdikcije u kojoj je učinjena; |
| 6.1.3.2 none of the Consultants or members of the Supervisory Board nominated by the Service Provider is currently under investigation, trial or any similar proceedings relating to or arising out of the offenses defined in clause 6.1.3.1; and | 6.1.3.2 se ni protiv jednog od Savetnika imenovanih od strane Pružaoca usluga, u trenutku predlaganja, imenovanja ili upućivanja na rad istog u Društvo, ne vodi istraga, sudski ili drugi postupak u vezi sa radnjama definisanim u alineji 6.1.3.1; i |
| 6.1.3.3 all the Consultants or members of the Supervisory Board nominated by the Service Provider possess the skills, experience and knowledge as set out in clause 3.2.2. | 6.1.3.3 svi Savetnici imenovani od strane Pružaoca usluga poseduju veštine, iskustvo i znanja predviđena stavom 3.2.2. |
| 6.1.4 The RoS, the Company, the Bidder and | 6.1.4 RS, Društvo, Ponuđač i Pružalac usluga |



the Service Provider each represent and warrant to the others as follows:

6.1.4.1 the execution and delivery by such Party of, and the performance by it of its obligations under, this Agreement have been duly authorised by all necessary action;

6.1.4.2 this Agreement has been duly executed and delivered by such Party; and

6.1.4.3 the execution and delivery of this Agreement, the performance by such Party of its obligations under this Agreement and the consummation by such Party of the transactions contemplated hereby will not:

a)   violate or be in conflict with any material agreement or commitment to which such Party is a party or by which such Party is bound; or

b)   violate any Governing Law in the case of the RoS, the Company and the Service Provider, and any statute or law or any judgment, decree, order, regulation or rule of any competent authority in the Netherlands to which the Bidder is subject in the case of the Bidder.

## 6.2   Regulatory Approvals

6.2.1   Where appropriate, the Service Provider and the Company shall be jointly responsible for the preparation of all submissions for the Regulatory Approvals and shall take all reasonable necessary steps in accordance with the Diligent Business Person Standard to procure the fulfilment of these approvals.

6.2.2   The Service Provider and the Company undertake to each other to file the Regulatory Approval applications in accordance with all relevant laws of the

---

ovim putem drugim Ugovornim stranama potvrđuju da:

6.1.4.1 su pribavljena sva neophodna ovlašćenja, dozvole i saglasnosti za potpisivanje ovog Ugovora, kao i za izvršenje obaveza predviđenih istim;

6.1.4.2 je ovaj Ugovor potpisan od strane ovlašćenog lica i uredno dostavljen svim Ugovornim stranama; i

6.1.4.3 potpisivanje ovog Ugovora, njegovo uredno dostavljanje svim Ugovornim stranama, te izvršenje obaveza predviđenih istim kao i izvršenje drugih transakcija predviđenih ovim Ugovorom neće:

a)   predstavljati kršenje niti biti u suprotnosti sa bilo kojim Značajnim sporazumom zaključenom od strane ili drugom obavezom preuzetom od strane bilo koje Ugovorne strane; ili

b)   predstavljati kršenje odredbi Merodavnog prava u slučaju RS, Društva ili Pružaoca usluga odnosno bilo kog zakona, podzakonskog akta, presude, odluke, naredbe ili pravila donetog od strane nadležnog organa u Holandiji koja je obavezujuća za Ponuđača.

## 6.2   Prethodna odobrenja

6.2.1   U zavisnosti od okolnosti slučaja, Pružalac usluga i Društvo preuzimaju odgovornost za i obavezuju se da pripreme sve neophodne zahteve, prijave i druge isprave neophodne za dobijanje Prethodnih odobrenja i da preduzmu sve potrebne mere sa Pažnjom dobrog privrednika u cilju dobijanja Prethodnih odobrenja.

6.2.2   Pružalac usluga i Društvo se obavezuju da podnesu sve zahteve, prijave i druge isprave neophodne za dobijanje Prethodnih odobrenja u skladu sa



| | | | | |
|---|---|---|---|---|
| | appropriate jurisdiction promptly after the date when this Agreement is signed and in no event later than 20 (twenty) Business Days thereafter. | | | zakonskim i drugim rokovima predviđenih merodavnim pravom odgovarajuće jurisdikcije, i to bez odlaganja, posle zaključenja ovog Ugovora, a najkasnije 20 (dvadeset) Radnih dana od dana zaključenja ovog Ugovora. |
| 6.2.3 | The Service Provider and the Company shall give and procure that each Group Company in the case of the Company and each Affiliate in the case of the Service Provider shall give the other Party and its advisers reasonable and prompt assistance in relation to the preparation of such applications and filing of response to any requests for information or meetings in the furtherance of obtaining the Regulatory Approvals. | | 6.2.3 | Pružalac usluga i Društvo se obavezuju da obezbede da svako društvo iz Grupe društava u slučaju Društva odnosno svako Povezano lice Pružaoca usluga u slučaju Pružaoca usluga pruži svaku razumnu pomoć u pripremi i izradi zahteva, prijava i drugih isprava neophodnih za dobijanje Prethodnih odobrenja, te bilo kojih naknadno potrebnih isprava, podnesaka, izjava i radnji neophodnih za dobijanje Prethodnih odobrenja. |
| 6.2.4 | The conditions in this clause 6.2 may only be waived (in whole or in part) by written agreement between the Service Provider and the Company. | | 6.2.4 | Obaveze predviđene stavom 6.2 mogu se otpustiti (u celini ili delimično) samo na osnovu pismenog sporazuma Pružaoca usluga i Društva. |
| 6.3 | **Immigration** | | 6.3 | **Odobrenje privremenog boravka i radne dozvole** |
| 6.3.1 | The RoS shall, to the fullest extent permitted by Governing Law, ensure that all Consultants and members of the Supervisory Board appointed by the Service Provider pursuant to this Agreement shall be permitted to enter, work for the Service Provider and/or the Company and remain in the Republic of Serbia for the duration of such work appointment unless reasonable grounds exist to deny such persons such rights, in which event details thereof shall be promptly supplied to the Service Provider. | | 6.3.1 | RS se obavezuje da će, u onoj meri u kojoj je to dozvoljeno Merodavnim pravom, obezbediti da svim Savetnicima i članovima Nadzornog odbora imenovanim od strane Pružaoca usluga na osnovu ovog Ugovora, biti omogućeno da dobiju dozvole, da uđu, rade i borave na teritoriji Republike Srbije u toku celokupnog trajanja njihovog radnog ili drugog sličnog odnosa u Pružaocu usluga i/ili Društvu osim ukoliko ne postoje osnovani razlozi da se izdavanje takvih dozvola odbije, u kom slučaju će o takvim okolnostima obavestiti Pružaoca usluga. |
| **7** | **TERM** | | **7.** | **VREME TRAJANJA UGOVORA** |
| 7.1 | This Agreement shall come into effect in accordance with clause 2 hereof. | | 7.1 | Ovaj Ugovor će stupiti na snagu u skladu sa članom 2. |
| 7.2 | Unless the Company and the Service Provider agree otherwise through a written agreement or this Agreement is | | 7.2 | Osim ukoliko se Društvo i Pružalac usluga pismenim putem ne saglase suprotno, ili ovaj Ugovor bude raskinut |



terminated by the Parties pursuant to clause 8 hereof, as applicable, this Agreement shall not be terminated earlier than the expiration of third anniversary of the Closing. In the event that the Parties continue to perform its obligations under this Agreement and if no Party objects to such performance for at least 60 (sixty) Business Days, this Agreement will automatically be prolonged for one year.

od strane Ugovornih strana u skladu sa članom 8, ovaj Ugovor neće biti raskinut pre isteka 3 (tri) godine od dana Stupanja na snagu. U slučaju da Ugovorne strane produže da ispunjavaju svoje obaveze određene ovim Ugovorom i ukoliko ni jedna Ugovorna strana u roku od 60 (šezdeset) Radnih dana ne prigovori na isto produženje ispunjenja smatraće se da je Trajanje Ugovora produženo za još godinu dana, počevši od dana kada je inicijalno Trajanje Ugovora okončano.

7.3   This Agreement may be prolonged in the manner set out in clause 7.2 for unlimited number of times.

7.3   Ovaj Ugovor može, na način regulisan u stavu 7.2 biti produžen neograničen broj puta.

7.4   The Parties may prolong the duration of this Agreement for a period longer than one year through a written agreement.

7.4   Ugovorne strane se mogu pismenim putem saglasiti da ovaj Ugovor produže na period duži od jedne godine.

## 8   TERMINATION

## 8.   RASKID UGOVORA

8.1   The RoS and/or the Company may (but shall not be obligated to) terminate this Agreement by a notice to the Service Provider and the Bidder upon the occurrence and during the continuance of any of the following events:

8.1   RS i/ili Društvo mogu (ali nisu ni na koji način obavezni) da raskinu ovaj Ugovor upućivanjem obaveštenja Pružaocu usluga i Ponuđaču u trenutku nastupanja ili trajanja bilo koje od ispod nabrojanih okolnosti:

8.1.1   the Service Provider or Consultants or members of the Supervisory Board nominated by the Service Provider as applicable, fail to comply with any of their material obligations in this Agreement (including fulfilment of the KPIs as set out by the Business Plan or other obligations set out by the Business Plan and/or any other strategic documentation) and do not correct such failure within 120 (one hundred twenty) days of the date of a notice requiring correction from the non-defaulting Party;

8.1.1   Pružalac usluga, Savetnici ili članovi Nadzornog odbora imenovani od strane Pružaoca usluga ne ispune bilo koju od svojih materijalno-pravnih obaveza predviđenih ovim Ugovorom (uključujući i ispunjenje KIP određenih Poslovnim planom ili drugih obaveza predviđenih Poslovnim planom i/ili drugim aktom) i ne ispune istu obavezu ni u naknadnom roku od 120 (sto dvadeset) dana od dana kada im je dostavljeno obaveštenje bilo koje druge Ugovorne strane kojim se zahteva ispunjenje predmetne obaveze.;

8.1.2   if the Raw Materials Agreements cease to be valid and legally binding before the expiration of third anniversary of the Closing or the Raw Materials Agreements are terminated or

8.1.2   Ukoliko Ugovori o sirovinama prestanu da važe i budu pravno obavezujući pre isteka roka od 3 (tri) godine od dana Stupanja na snagu ili Ugovori o sirovinama budu raskinuti ili odredbe



|  | breached in any material manner by a respective supplier; | | istih budu na bilo koji drugi način prekršene od strane odgovarajućeg dobavljača; |
|---|---|---|---|
|  | in which cases the Company shall not be obliged to pay neither the Termination Fee nor the Privatization Bonus to the Service Provider and will retain the right on indemnification from the Service Provider and/or the Bidder for of all damages suffered. | | u kom slučaju Društvo neće biti u obavezi da plati niti Naknadu za raskid Ugovora niti Privatizacioni bonus Pružaocu usluga i zadržaće pravo na naknadu štete od strane Pružaoca usluga i/ili Ponuđača za svu pretrpljenu štetu. |
| 8.2 | The RoS and the Company may (but shall not be obliged to) terminate this Agreement by notice to the Service Provider and the Bidder upon the occurrence and during the continuance of a Bankruptcy Event with respect to the Service Provider or the Bidder in which case the Company shall not be obliged to pay neither the Termination Fee nor the Privatization Bonus to the Service Provider. | 8.2 | RS i Društvo mogu (ali nisu ni na koji način obavezni) da raskinu ovaj Ugovor upućivanjem obaveštenja Pružaocu usluga i Ponuđaču u slučaju nastupanja ili trajanja Stečaja ili likvidacije Pružaoca usluga ili Ponuđača, a u kom slučaju Društvo neće biti u obavezi da plati niti Naknadu za raskid Ugovora niti Privatizacioni bonus Pružaocu usluga. |
| 8.3 | The Service Provider and the Bidder may (but shall not be obligated to) terminate this Agreement by notice to the RoS and the Company: | 8.3 | Pružalac usluga i Ponuđač mogu (ali nisu ni na koji način obavezni) da raskine ovaj Ugovor upućivanjem obaveštenja RS ili Društvu u slučaju da: |
| 8.3.1 | if the Company fails to comply with any of its payment obligations in accordance with this Agreement; | 8.3.1 | Društvo ne ispuni svoje obaveze povodom bilo kog plaćanja predviđene ovim Ugovorom; |
| 8.3.2 | the RoS or the Company fails to comply with any of its other material obligations in this Agreement and does not correct such failure within 120 (one hundred twenty) days of the date of a notice requiring correction from the non-defaulting Party; | 8.3.2 | RS ili Društvo ne ispune bilo koju od svojih materijalno-pravnih obaveza predviđenih ovim Ugovorom i ne ispune istu obavezu ni u naknadnom roku od 120 (sto dvadeset) dana od dana kada im je dostavljeno obaveštenje bilo koje druge Ugovorne strane; |
|  | in which cases the Company shall, without prejudice to any other rights that the Bidder and Service Provider have under this Agreement and Governing Law, be obliged to pay the Termination Fee to the Service Provider within 90 (ninety) days of sending the termination notice. | | u kom slučaju će Društvo, nezavisno od drugih prava koje Ponuđač i Pružalac usluga imaju na osnovu ovog Ugovora i Merodavnog prava, biti obavezno da Pružaocu usluga isplati Naknadu za raskid Ugovora u roku od 90 (devedeset) dana od kada je obaveštenje o raskidu poslato. |
| 8.4 | The RoS and the Company are entitled to unilaterally terminate this Agreement in case of any privatization | 8.4 | RS i Društvo će biti ovlašćeni da jednostrano raskinu ovaj Ugovor u slučaju uspešnog okončanja postupka |

41

| | | | |
|---|---|---|---|
| | of the Company, with 90 (ninety) days termination notice. | | privatizacije Društva, sa raskidnim rokom od 90 (devedeset) dana. |
| 8.5 | If the RoS or the Company terminates this Agreement in accordance with clause 8.4, the Company shall be obliged to pay to the Service Provider the Privatization Bonus in line with the terms specified in clause 3.2.9. | 8.5 | Ukoliko RS ili Društvo raskinu ovaj Ugovor u skladu sa stavom 8.4, Društvo će Pružaocu usluga platiti Privatizacioni bonus kako je isti definisan u tački 3.2.9. |
| 8.6 | Any Party is entitled to unilaterally terminate this Agreement if an event of Vis Major (other than an event resulting from an action of the notifying Party) delays performance of any of the terms of this Agreement by any Party for a time period exceeding 120 (one hundred twenty) days in which case neither Party shall be entitled for any indemnification from other Party. | 8.6 | Bilo koja Ugovorna strana će biti ovlašćena da jednostrano raskine ovaj Ugovor u slučaju da nastupanje Više sile (osim ukoliko takva okolnost ne nastupi krivicom Ugovorne strane koja želi da raskine ovaj Ugovor) odloži ispunjenje bilo koje obaveze bilo koje Ugovorne strane na osnovu ovog Ugovora u periodu dužem od 120 (sto dvadeset) dana u kom slučaju ni jedna od Ugovornih strana neće imati pravo na naknadu štete od bilo koje druge Ugovorne strane. |
| **9** | **VIS MAJOR** | **9.** | **VIŠA SILA** |
| 9.1 | The performance by the Parties of their obligations hereunder shall be excused for so long as such performance is prevented by an event of Vis Major (other than an event caused by the Party seeking excuse of performance). | 9.1 | Ugovorne strane se obavezuju da će obaveze predviđene ovim Ugovorom ispunjavati u svemu u skladu sa istim osim ukoliko ne budu u tome sprečene nastupanjem slučaja Više sile (ili drugih okolnosti koje delimično ili u potpunosti onemogućuju ispunjenje obaveza po osnovu ovog Ugovora, a za čije nastupanje nije odgovorna ni jedna od Ugovornih strana). |
| 9.2 | The Parties shall consult with each and take all reasonable steps to minimise the losses to either Party from the event of Vis Major and to perform their obligations under this Agreement to the greatest extent possible. | 9.2 | Ugovorne strane će se međusobno dogovarati i preduzeti sve razumne mere u cilju najvećeg mogućeg umanjenja štete koja bi nastupila za bilo koju od Ugovornih strana usled delimične ili potpune nemogućnosti ispunjenja obaveza po osnovu ovog Ugovora izazvane nastupanjem slučaja Više sile. |
| **10** | **LIMITATION OF LIABILITY** | **10.** | **OGRANIČENJE OD ODGOVORNOSTI** |
| 10.1 | In no event shall the Company or the RoS be liable to the Bidder or the Service Provider or the Consultants or members of the Supervisory Board nominated by the Service Provider | 10.1 | Niti RS niti Društvo neće ni u kom slučaju biti odgovorni Ponuđaču ili Pružaocu usluga kao ni Savetnicima ili članovima Nadzornog odbora predloženih od strane Pružaoca usluga |



under this Agreement (the **Indemnified Parties**):

10.1.1 to the extent that any losses, claims, actions, damages and liabilities, is determined in a final judgment of a competent court (from which there is no right of further appeal) to have resulted solely or predominantly from the wilful misconduct or Gross Negligence of the Indemnified Parties;

10.1.2 for any special, indirect, punitive or consequential damages, or loss of profits or lost business, loss of anticipated savings or loss of opportunity;

10.1.3 in respect of any claim if and to the extent that such claim relates to any losses recoverable by the Indemnified Party pursuant to any insurance policy;

10.1.4 to the extent that a claim would not have arisen but for an omission or a voluntary act of the Indemnified Party occurring after the Closing;

10.1.5 in respect of any claim to the extent that the claim is based upon a liability which is contingent only or is otherwise not capable of being quantified unless and until such liability ceases to be contingent and becomes an actual liability or becomes capable of being quantified, as the case may be.

**11    NON-COMPETITION**

11.1 The Service Provider and the Bidder hereby undertakes for the benefit of the other Parties that, during the Term of this Agreement, the Service Provider, the Bidder as well as members of the Supervisory Board nominated by the Service Provider and the Consultants, shall not, and shall procure that each of its Affiliates shall not, without the consent of the RoS:

11.1.1 carry on or be engaged or hold any direct or indirect interest in the issued

---

na osnovu ovog Ugovora (**Oštećena lica**):

10.1.1 u meri u kojoj su gubici, potraživanja, tužbeni zahtevi, tužbe ili sa istom izjednačeni akti, šteta i odgovornost utvrđene u pravosnažnoj odluci nadležnog suda mogu u potpunosti ili delimično pripisati radnji bilo koje od Oštećenih lica preduzetoj namerno ili usled krajnje nepažnje; ili

10.1.2 za bilo koju posrednu ili posledičnu štetu ili naknadu štete u iznosu većem od učinjene štete; ili za izmaklu korist, gubitke očekivanih ušteda, ili propuštanje poslovne prilike;

10.1.3 za bilo koje potraživanje, u meri u kojoj se isto odnosi na gubitke koji Oštećenim licima mogu biti nadoknađeni na osnovu bilo koje polise osiguranja;

10.1.4 u meri u kojoj potraživanje ne bi nastalo da nije došlo do propusta ili umišljajnog ponašanja Oštećenih lica nakon nastupanja Stupanja na snagu;

10.1.5 u vezi bilo kojeg potraživanja u meri u kojoj je isto zasnovano na odgovornosti koja je uslovljena ili odgovornosti koja ne može biti određena i odrediva pre nego što odgovarajući uslov bude ispunjen, te ista odgovornost postane bezuslovna ili stvarna, u zavisnosti od okolnosti slučaja, postane određena ili odrediva;

**11.   ZABRANA KONKURENCIJE**

11.1 Pružalac usluga i Ponuđač se ovim putem obavezuju drugim Ugovornim stranama da, u toku celokupnog Trajanja Ugovora, ni Pružalac usluga ni Ponuđač, kao ni Savetnici i članovi Nadzornog odbora predloženi od strane Pružaoca usluga na osnovu ovog Ugovora, kao ni sa njima Povezana lica neće bez saglasnosti RS:

11.1.1 stupiti u ili nastaviti da budu u radnom ili drugom sličnom odnosu, ili



share capital of any business that operates in the steel sector, and represents direct competitor of the Company regardless of the territory or jurisdiction;

posredno ili neposredno posedovati udeo u kapitalu bilo kog privrednog društva koje se bavi privrednom delatnošću proizvodnje, prerade ili distribucije sirovog gvožđa, čelika i ferolegura, i na taj način biti direktan konkurent Društvu bez obzira na teritoriju ili jurisdikciju u kojoj isto obavlja delatnost;

11.1.2  provide any goods or services, or enter into, or have an interest in, any arrangement with any third party providing goods or services, in respect of any business that operates in the steel sector and represents direct competition of the Company, regardless of the territory or jurisdiction;

11.1.2  pružati dobra ili usluge, ili zaključiti, ili održati na snazi bilo koji ugovor sa trećim licima koja se bave privrednom delatnošću   proizvodnje, prerade ili distribucije sirovog gvožđa, čelika i ferolegura, i na taj način biti direktan konkurent Društvu bez obzira na teritoriju ili jurisdikciju u kojoj isto obavlja delatnost;

11.1.3  cause or permit any person directly or indirectly to do any of the foregoing acts or things in the name of or with the support of the Service Provider or the Bidder.

11.1.3  na bilo koji način uticati na ili dozvoliti bilo kom licu da posredno ili neposredno preduzima bilo koju od iznad nabrojanih radnji u ime ili za račun ili uz podršku ili podsticanje Pružaoca usluga ili Ponuđača.

11.2   During a period of 2 (two) years after the termination of this Agreement, the obligations set out in this clause 11 shall continue to exist, but shall become limited to the European Economic Area.

11.2   Obaveze određene u članu 11 će nastaviti da važe tokom perioda od 2 (dve) godine posle prestanka važenja ovog Ugovora, ali će iste biti ograničene na teritoriju Evropskog ekonomskog prostora.

11.3   The obligations set out in this clause 11 shall not apply to already existing interests, arrangements and other matters as disclosed in Schedule 6 hereto by each of the Service Provider, the Bidder as well as members of the Supervisory Board nominated by the Service Provider and Consultants.

11.3   Obaveze ustanovljene članom 11 se neće primenjivati na već postojeće poslovanje, sporazume i druga pitanja definisana u Prilogu 6 a u vezi sa Ponuđačem, Pružaocem usluga kao i članovima   Nadzornog   odbora imenovanim od strane Pružaoca usluga i Savetnicima.

## 12   ANNOUNCEMENTS

## 12.   OBJAVE

12.1   No public announcement or any other form of disclosure concerning the matters   contemplated   by   this Agreement or any ancillary matter, including the Business itself, shall be made by one Party without the prior written approval of the Supervisory Board.

12.1   Ni jedna od Ugovornih strana neće biti ovlašćena da učini bilo kakvu objavu ili izjavu, u ma kojem obliku, u vezi sa sadržajem bilo koje odredbe ovog Ugovora   bez   prethodne   pisane saglasnosti Nadzornog odbora.



| | |
|---|---|
| 12.2 Each Party may make an announcement concerning the matters contemplated by this Agreement or any ancillary matter if required by the Governing Law (or if an announcement to the Serbian Parliament is considered advisable by the RoS) provided that to the extent practicable any such announcement shall be made only after prior written approval of the Supervisory Board unless refusal of such approval would be contrary to the Governing Law. | 12.2 Bilo koja od Ugovornih strana može učiniti objavu ili izjavu u vezi sa sadržajem bilo koje odredbe ovog Ugovora ukoliko je isto u obavezi da učini na osnovu Merodavnog prava (ili učiniti izjavu ili saopštenje Narodnoj skupštini Republike Srbije ili odboru odnosno drugom telu iste ukoliko RS bude smatrala da je to neophodno) pod uslovom da, u meri u kojoj je to moguće u zavisnosti od okolnosti slučaja, dobije prethodno pismeno odobrenje Nadzornog odbora, osim u slučaju kada bi odluka Nadzornog odbora da isto odobrenje uskrati bila u suprotnosti sa imperativnim normama Merodavnog prava. |
| 12.3 The restrictions contained in clause 12 shall continue to apply after the termination of this Agreement without limit in time. In the event that Supervisory Board ceases to exist at some point in time, the prior written approval shall be granted by a competent authority of the RoS. | 12.3 Ograničenja i obaveze predviđene ovim članom 12 će nastaviti da važe bez vremenskog ograničenja i posle prestanka važenja ovog Ugovora. U slučaju da Nadzorni odbor prestane da postoji u bilo kom trenutku, RS će biti nadležna da donese odluku o izdavanju prethodnog pismenog odobrenja. |

| | |
|---|---|
| **13 CONFIDENTIALITY** | **13. POVERLJIVOST** |
| 13.1 Each Party shall treat as strictly confidential all information received or obtained as a result of entering into or performing this Agreement which relates to: | 13.1 Svaka od Ugovornih strana se obavezuju da sve podatke koji su im stavljeni na raspolaganje ili su do njih na drugi način došli na osnovu ili u vezi sa zaključenjem ili primenom ovog Ugovora, a koji se odnose na: |
| 13.1.1 the provisions of this Agreement; | 13.1.1 odredbe ovog Ugovora; |
| 13.1.2 the negotiations relating to this Agreement; | 13.1.2 pregovore za zaključenje vođene na osnovu ovog Ugovora; |
| 13.1.3 the subject matter of this Agreement; or | 13.1.3 predmet ovog Ugovora; ili |
| 13.1.4 another Party. | 13.1.4 druge Ugovorne strane. |
| 13.2 Each Party may disclose information which would otherwise be confidential if and to the extent: | 13.2 Ugovorne strane mogu saopštiti podatak koji bi se inače smatrao poverljivim ukoliko, i u meri u kojoj: |
| 13.2.1 required by the Governing Law; | 13.2.1 to zahteva Merodavno pravo; |
| 13.2.2 necessary or desirable for the purpose of making submissions to regulatory | 13.2.2 je to neophodno ili poželjno za potrebe podnošenja podnesaka regulatornim |

| | |
|---|---|
| bodies or for obtaining any regulatory consents; | organima ili za dobijanje bilo kojeg odobrenja istih; |
| 13.2.3 necessary or desirable for the conduct of any arbitration pursuant to clause 17; | 13.2.3 je to neophodno ili poželjno za vođenje arbitražnog postupka u skladu sa članom 17; |
| 13.2.4 disclosed to the professional advisers, auditors and bankers of that Party provided that such persons undertake the same confidentiality obligation; | 13.2.4 je saopšten stručnom savetniku, revizoru ili banci Ugovorne strane pod uslovom da se takva lica obavežu na obavezu čuvanja poverljivosti kako je ista predviđena ovim Ugovorom; |
| 13.2.5 the information has come into the public domain through no fault of that Party; or | 13.2.5 je podatak postao dostupan javnosti bez krivice Ugovorne strane; ili |
| 13.2.6 the other Parties have given prior written approval to the disclosure; | 13.2.6 su ostale Ugovorne strane dale prethodnu pisanu saglasnost za otkrivanje informacije; |
| provided that to the extent practicable any such disclosure shall be made only after notice to and consultation with the other Parties. | pod uslovom da, ukoliko i u meri u kojoj je to moguće, isto saopštenje bude učinjeno nakon što ostale Ugovorne strane budu o istom obaveštene i od njih bude zatraženo mišljenje o istom. |
| 13.3 Prior to engagement by the Company of any personnel nominated or seconded by the Service Provider, such personnel shall be required to execute confidentiality agreements on industry standard terms restricting them from utilising information obtained with respect to the Company other than in connection with the Business and this Agreement. | 13.3 Pre nego što bilo koje lice, predloženo ili upućeno na rad u Društvo od strane Pružaoca usluga, zasnuje radni ili drugi sličan odnos u Društvu, isto će biti dužno da potpiše ugovor o čuvanju poverljivih podataka, sadržaja koji je uobičajen u skladu sa poslovnim običajima u predmetnoj privrednoj grani, a koji će ista lica ograničiti u korišćenju podataka vezanih za Društvo, a koje nisu vezane za Privredne delatnosti ili ovaj Ugovor. |
| **14    NOTICES AND OTHER COMMUNICATIONS** | **14.   OBAVEŠTENJA I OSTALE PREPISKE** |
| 14.1 Each notice and every other communication given or made under or in connection with this Agreement (together with any enclosure) shall be: | 14.1 Svako obaveštenje i bilo koja druga komunikacija (saopštena informacija) regulisana ili u vezi sa ovim ugovorom (sa pratećim prilozima) treba da bude: |
| 14.1.1 in writing; | 14.1.1 u pismenoj formi; |
| 14.1.2 in English or if not exclusively in English, then accompanied by a full translation into English of the portions | 14.1.2 na engleskom jeziku, ili ukoliko nije u potpunosti na engleskom jeziku, onda propraćena potpunim prevodom na |

46



not in English made by an appropriately certified translator, and certified by such translator in a manner approved by the receiving Party and the receiving Party shall be entitled to assume the accuracy of and rely upon such translation;

14.1.3 be addressed as provided in clause 14.2 and, if so addressed, shall be deemed to have been duly given or made as follows:

14.1.3.1 if sent by personal delivery, upon delivery at the address of the relevant Party upon written confirmation of receipt; and

14.1.3.2 if sent by facsimile or email of a pdf document, upon dispatch with receipt of confirmation of transmittal, and such receipt shall be in accordance with the Governing Law;

provided that, if, in accordance with the above provisions, any such notice or other communication would otherwise be deemed to be given or made outside working hours, such notice or other communication shall be deemed to be given or made at the start of the next period of working hours.

14.2 The relevant addressee, address and facsimile number of each Party for the purpose of this Agreement, subject to clause 14.3 are:

**RoS**

Government of Republic of Serbia
Nemanjina 11, 11000, Belgrade, Republic of Serbia
Cabinet of the Prime minister

Tel. +381 (0)11 362 0115
Fax. +381 (0)11 362 0115
Email: predsednikvlade@gov.rs

---

engleski jezik onih delova koji nisu na engleskom jeziku, od strane sudskog prevodioca, i overen od strane takvog prevodioca na način koji odobri Ugovorna strana kojoj je prevod upućen, i ta Ugovorna strana ima pravo da računa na tačnost i da se pouzda u takav prevod;

14.1.3 upućena kao što je predviđeno članom 14.2 a pored toga smatraće se da je uredno predata i ukoliko:

14.1.3.1 je učinjena po pravilima ličnog dostavljanja, i dostavljena na adresu odgovarajuće Ugovorne strane uz pismenu potvrdu o prijemu pouzećem; i

14.1.3.2 ako je faksom ili elektronskom poštom poslato u PDF formatu (*eng. Portable Document Format*), uz odgovarajuću potvrdu o slanju nakon otpreme koja mora biti u skladu sa Merodavnim pravom;

pod uslovom da će se isto obaveštenje ili drugi vid prenosa podataka u skladu sa odredbama navedenim iznad, ukoliko je učinjeno van radnog vremena, smatrati učinjenim prvog narednog Radnog dana na početku radnog vremena.

14.2 Lica ovlašćena za prijem obaveštenja, adresa i broj faksa Ugovornih strana, a za svrhe ovog Ugovora, osim ukoliko suprotno nije predviđeno stavom 14.3, su:

**RS**

Vlada Republike Srbije
Nemanjina 11, 11000 Beograd, Republika Srbija
Kabinet predsednika Vlade

Tel. +381 (0)11 362 0115
Fax. +381 (0)11 362 0115
Email: predsednikvlade@gov.rs



| **The Company** | **Društvo** |
|---|---|
| Zelezara Smederevo doo Smederevo Radinac, 11300 Smederevo, Republic of Serbia Director/Cabinet of the Director | Železara Smederevo doo Smederevo Radinac, 11300 Smederevo, Republika Srbija Direktor/Kabinet direktora |
| Tel. +381 (0)26 462 4730 Fax. +381 (0)26 462 1076 Email: kabinet@zelsd.rs | Tel. +381 (0)26 462 4730 Fax. +381 (0)26 462 1076 Email: kabinet@zelsd.rs |
| **The Service Provider** | **Pružalac usluga** |
| HPK Management LLC Belgrade Bulevar Zorana Djindjica 64A, 11070 Belgrade, Republic of Serbia Dr. Peter Kamaras | HPK Management d.o.o. Beograd Bulevar Zorana Điniđića 64A, 11070 Beograd, Republika Srbija Dr. Peter Kamaras |
| Tel. +381 (0)11 3129 825 Fax. +381 (0)11 3129 823 Email: p.kamaras@metal.sk | Tel. +381 (0)11 3129 825 Fax. +381 (0)11 3129 823 Email: p.kamaras@metal.sk |
| **Bidder** | **Ponuđač** |
| TMF Netherlands B.V. Luna ArenA, Herikerbergweg 238, 1101 CM Amsterdam, The Netherlands. P.O. Box 23393, 1100 DW Amsterdam, The Netherlands Dr. Peter Kamaras | TMF Netherlands B.V. Luna ArenA, Herikerbergweg 238, 1101 CM Amsterdam, The Netherlands. P.O. Box 23393, 1100 DW Amsterdam, The Netherlands Dr. Peter Kamaras |
| Tel. +31 (0) 2057 55600 Fax. +31 (0) 2067 30016 Email: p.kamaras@metal.sk | Tel. +31 (0) 2057 55600 Fax. +31 (0) 2067 30016 Email: p.kamaras@metal.sk |

| | | |
|---|---|---|
| 14.3 | A Party may notify the other Party of a change to its name, relevant addressee, address or facsimile number of the purpose of clause 14.2; provided that such notification shall be effective on: | 14.3 Ugovorna strana može obavestiti drugu Ugovornu stranu o promeni svog poslovnog imena, lica ovlašćenog za prijem obaveštenja, adrese ili broja faksa za svrhe određene u stav 14.2 pri čemu će se smatrati da je takvo obaveštenje počelo da proizvodi pravno dejstvo: |
| 14.3.1 | the date specified in the notification as the date on which the change is to take place; or | 14.3.1 onog datuma koji je određen u samom obaveštenju kao datum nastupanja pravnih dejstava; ili |
| 14.3.2 | if no date is specified or the date specified is less than 5 (five) Business Days after the date on which notice is given, the date falling 5 (five) Business Days after notice of any such change has been given. | 14.3.2 ukoliko nije tačno određen dan, ili ukoliko vremenski period do navedenog datuma kraći od 5 (pet) Radnih dana od dana kada je obaveštenje učinjeno, obaveštenje stupa na snagu 5 (pet) Radnog dana od |



dana kada je obaveštenje učinjeno.

| | |
|---|---|
| **15**    **MISCELLANEOUS MATTERS** | **15.**    **PRELAZNE I ZAVRŠNE ODREDBE** |
| 15.1    **Assignment** | 15.1    **Ustupanje prava i obaveza iz Ugovora** |
| 15.1.1 Save in accordance with the express provisions hereof, no Party shall assign all or any part of the benefit of, or its rights or benefits under, or delegate any of its obligations under, this Agreement. | 15.1.1 Osim ukoliko neka odredba ovog Ugovora izričito ne predviđa suprotno, ni jedna Ugovorna strana ne sme ustupiti sve ili deo bilo kojeg prava koje stekne na osnovu ovog Ugovora, niti da prenese svoje obaveze iz ovog Ugovora na treće lice. |
| 15.2    **Entire Agreement** | 15.2    **Ceo Ugovor** |
| 15.2.1 This Agreement constitutes the whole and only agreement between the parties relating to the conduct of the management of the Company and supersedes and extinguishes any prior drafts, agreements, undertakings, representations, warranties and arrangements of any nature whatsoever, whether or not in writing relating thereto. | 15.2.1 Ovaj Ugovor predstavlja potpuni i jedini sporazum između Ugovornih strana u vezi upravljanja Društvom, i to tako što će zameniti i učiniti da svi prethodni nacrti, sporazumi, obaveze, izjave, garancije ili dogovori bilo koje prirode ne proizvode pravno dejstvo, bez obzira da li su isti sačinjeni u pismenoj formi ili ne. |
| 15.3    **Language** | 15.3    **Jezik** |
| 15.3.1 This Agreement has been executed in Serbian and English language. In case of any discrepancy or inconsistency between these two versions, the English version shall prevail. | 15.3.1 Ovaj Ugovor je sastavljen na srpskom i engleskom jeziku. U slučaju bilo kakvih neslaganja između ove dve verzije, verzija na engleskom jeziku će biti merodavna i obavezujuća za Ugovorne strane. |
| 15.4    **Copies of the Agreement** | 15.4    **Kopije ugovora** |
| 15.4.1 The Agreement has been signed in 8 copies, two of which shall be given to each Party. All copies have equal legal power and effect and together shall constitute one and the same agreement. | 15.4.1 Ovaj Ugovor je sačinjen u 8 primeraka, od kojih se po dva predaju svakoj Ugovornoj strani. Svi primerci imaju jednaku pravnu snagu i dejstvo i zajedno predstavljaju jedan identični ugovor. |
| 15.5    **Amendments** | 15.5    **Izmene i dopune Ugovora** |
| 15.5.1 This Agreement may be amended in writing and such amendment shall be signed by the representatives of the Parties, unless otherwise stipulated hereunder. | 15.5.1 Odredbe ovog Ugovora se mogu izmeniti i dopuniti samo u pismenoj formi, i iste moraju biti potpisane od strane ovlašćenih zastupnika Ugovornih strana, osim ukoliko suprotno nije predviđeno ovim |



Ugovorom.

### 15.6 No Partnership

15.6.1 The Service Provider shall be an independent contractor pursuant to this Agreement. Save as otherwise provided for in this Agreement or the Governing Law, no Party shall have any express or implied right or authority to assume or create any obligations on behalf of or in the name of another Party or to bind another Party to any contract, agreement or undertaking with any third party.

### 15.7 Severability

15.7.1 Each undertaking contained in this Agreement shall be read and constructed independently of the other undertakings herein contained so that if one or more should be held to be invalid pursuant to the Governing Law then the remaining undertakings shall be valid to the extent that they are not held to be so invalid.

15.7.2 If one or more provisions hereof should be declared invalid pursuant to the Governing Law but would have been held valid if part of the wording thereof had been deleted or the range of activities or area dealt with thereby reduced in scope, the clauses shall apply with such modifications as may be necessary to make them valid and effective.

### 15.8 Third Parties

15.8.1 Other than the Indemnified Parties, there are no third parties to this Agreement and no person who is not a Party to this Agreement shall have any right to enforce any term of this Agreement.

### 15.9 Waiver

15.9.1 No waiver by any Party of any of the provisions hereof shall be effective unless explicitly set forth in writing,

### 15.6 Isključenje zastupanja

15.6.1 Pružalac usluga Ugovor zaključuje kao nezavisno lice. Osim ukoliko suprotno nije predviđeno ovim Ugovorom ili Merodavnim pravom, nijedna od Ugovornih strana neće imati ni izričito niti prećutno pravo ili ovlašćenje da preuzme ili da stvori bilo kakvu obavezu u ime ili za račun drugih Ugovornih strana ili da obaveže druge Ugovorne strane na zaključenje bilo kog ugovora, sporazuma ili obaveze sa bilo kojim trećim licem.

### 15.7 Ništavost pojedinih odredbi

15.7.1 Sve odredbe ovog Ugovora treba tumačiti nezavisno od drugih odredbi ovog Ugovora, i to tako da ukoliko jedna ili više odredbi postanu ništave u skladu sa Merodavnom pravu, ostale odredbe će se smatrati važećim u onoj meri u kojoj to dozvoljava Merodavno pravo.

15.7.2 Ukoliko bi jedna ili više odredbi ovog Ugovora postale ništave u skladu sa Merodavnim pravom, a deo takve odredbe bi se mogao izostaviti ili izmeniti tako da ostatak iste bude u skladu sa Merodavnim pravom, smatraće se da je tako promenjena odredba ugovorena i proizvodiće pravno dejstvo.

### 15.8 Treća lica

15.8.1 Osim Oštećenih lica, nema trećih lica koji stiču prava i obaveze iz ovog Ugovora niti lica koja nisu Ugovorne strane imaju pravo da utiču na izvršenje ili primenu bilo koje odredbe ovog Ugovora.

### 15.9 Odricanje od prava

15.9.1 Odricanje od prava bilo koje Ugovorne strane u vezi bilo koje odredbe ovog Ugovora proizvodiće pravno dejstvo



signed by the Party so waiving and in accordance with the Governing Law. Except as otherwise set forth in this Agreement, no failure to exercise, or delay in exercising, any rights, remedy, power or privilege arising from this Agreement shall operate or be construed as a waiver thereof, nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.

jedino u slučaju da je odricanje izvršeno u pismenoj formi, potpisano od strane iste i da je u skladu sa Merodavnim pravom. Osim ukoliko suprotno nije predviđeno ovim Ugovorom, neispunjenje ili kašnjenje sa ispunjenjem bilo kojeg prava, pravnog leka ili ovlašćenja koje proizilaze iz ovog Ugovora neće biti tumačeno kao odricanje od istog, niti će potpuno ili delimično izvršenje bilo kojeg prava, pravnog leka ili ovlašćenja prekludirati bilo koje drugo ili naknadno izvršenje nekog drugog prava, pravnog leka ili ovlašćenja.

## 15.10 Additional Actions and Documents

15.10.1 The Parties hereby agree to take or cause to be taken such actions, necessary to execute the Agreement, and to obtain consents in order to fully effectuate the purposes of the Agreement.

## 15.10 Dodatne radnje i podnesci

15.10.1 Ugovorne strane su saglasne da će preduzeti ili da učiniti da budu preduzete radnje koje su neophodne za izvršenje ovog Ugovora, kao i da će dobiti svaku potrebnu saglasnost kako bi se ispunio cilj ovog Ugovora.

## 15.11 Costs

15.11.1 Save as otherwise stated in this Agreement, each Party shall pay its own costs and expenses in relation to the negotiation, preparation, execution and carrying into effect of this Agreement including obtaining of the Regulatory Approvals.

## 15.11 Troškovi

15.11.1 Osim ukoliko suprotno nije predviđeno ovim Ugovorom, svaka Ugovorna strana će snositi svoje troškove koji proizilaze iz pregovaranja, pripremanja, izvršavanja i stupanja na snagu ovog Ugovora, uključujući i dobijanje Prethodnih odobrenja.

## 16 DISPUTE RESOLUTION

16.1 Prior to resorting to remedies pursuant to clause 17, the Parties will attempt to promptly resolve a Dispute in good faith through negotiations.

## 16. REŠAVANJE SPOROVA

16.1 Pre nego što se odluče na rešavanje Spora na način definisan članom 17, Ugovorne Strane se obavezuju da će pokušati da u najkraćem roku pronađu rešenje, mirnim putem i u skladu sa načelom savesnosti i poštenja.

16.2 Unless otherwise agreed in writing, all discussions regarding the Dispute shall be conducted without prejudice to the rights of each of the Parties and shall be conducted between the authorised representatives of the Parties. If such Dispute is not resolved within 30 (thirty) days or within a time period prescribed by a later written

16.2 Osim ukoliko suprotno pismenim putem ne bude ugovoreno, svaka rasprava u vezi Spora sprovodiće se od strane ovlašćenih zastupnika Ugovornih strana i to tako da ne utiče niti da na bilo koji drugi način menja prava Ugovornih strana. Ukoliko se na predviđeni način Spor ne reši u roku od 30 (trideset) dana ili u nekom drugom



|  | agreement between the Parties, such Dispute is to be settled according to remedies in clause 17. |  | periodu određenom naknadnim pismenim sporazumom Ugovornih strana, takav Spor će se rešavati u skladu sa odredbama člana 17. |
|---|---|---|---|
| **17** | **CHOICE OF LAW AND JURISDICTION** | **17.** | **MERODAVNO PRAVO I NADLEŽNOST SUDA** |
| 17.1 | This Agreement shall be governed by and construed in accordance with the Governing Law. | 17.1 | Na ovaj Ugovor će se primenjivati Merodavno pravo i treba ga tumačiti u skladu sa istim. |
| 17.2 | Any Dispute arising out of or in connection with this Agreement, including any question regarding its existence, validity or termination, which has not been resolved through negotiation pursuant to clause 16 within 30 (thirty) days after the occurrence of such Dispute, shall be referred to and finally resolved by arbitration under the London Court of International Arbitration Rules, which Rules are deemed to be incorporated by reference to this clause. | 17.2 | Svaki Spor koji proistekne u vezi sa ovim Ugovorom uključujući i pitanje njegovog postojanja, punovažnosti ili raskida, a koji se ne reši sporazumno u skladu sa članom 16 u roku od 30 (trideset) dana od nastanka istog, biće upućen na rešavanje i rešen konačnom odlukom donetom od strane arbitražnog veća organizovanog u skladu sa Pravilima Međunarodnog arbitražnog suda u Londonu, koja Pravila se smatraju uključenim u ovaj član. |
| 17.3 | The London Court of International Arbitration shall act as both, the administrative body and appointing authority and shall consist of three arbitrators. The Service Provider and Bidder shall have the right to jointly nominate one arbitrator and the Company and the RoS shall have the right to nominate, by joint signature, one arbitrator and the two party-nominated arbitrators shall jointly nominate the third arbitrator, who shall act as a chairman. The place of arbitration shall be London, England. The language to be used in the arbitral proceedings shall be English. All Disputes shall be resolved in accordance with the effective substantive laws of Republic of Serbia being the Governing Law. | 17.3 | Arbitražno veće Međunarodnog arbitražnog suda u Londonu će biti administrativno i izborno telo i sastojaće se od 3 (tri) arbitra. Pružalac usluga i Ponuđač će imati pravo da zajedničkom odlukom imenuju jednog arbitra, dok će RS i Društvo imati pravo da zajedničkom odlukom imenuju jednog arbitra, dok će treći arbitar biti izabran zajedničkom odlukom arbitara izabranih odlukom Ugovornih strana i isti će biti predsednik arbitražnog veća. Sedište arbitraže će biti u Londonu, Velika Britanija. Jezik arbitraže će biti engleski. Merodavno materijalno pravo arbitražnih postupaka će biti pravo Republike Srbije iz razloga što isto predstavlja Merodavno pravo. |
| 17.4 | Any award shall be binding, final and enforceable before a tribunal possessing jurisdiction. | 17.4 | Svaka odluka arbitražnog veća će biti konačna i izvršiva pred nadležnim organima. |
| 17.5 | Each Party agrees to be bound by all and any awards or decisions of the arbitration tribunal appointed | 17.5 | Odluka arbitraže imenovane u skladu sa ovim članom će biti obavezujuća za Ugovorne strane bez obzira da li je |



| | |
|---|---|
| pursuant to this clause whether or not it took part in the arbitral proceedings provided that it was given notice of such proceedings in accordance with the provisions of this clause. This shall also apply to any decisions relating to procedural matters. | Ugovorna strana učestvovala u arbitražnom postupku, a pod uslovom da je istoj uredno dostavljeno obaveštenje o pokretanju postupka u skladu sa ovim članom. Isto će se primeniti na bilo koju odluku procesne prirode. |
| 17.6 The Parties waive any rights of application or appeal to any court or tribunal of competent jurisdiction to the fullest extent permitted by law in connection with any question of law arising in the course of an arbitration or with respect to any award rendered in accordance with this clause. | 17.6 Ugovorne strane se odriču, prava na žalbu bilo kom sudu ili tribunalu nadležne jurisdikcije u meri u kojoj je to dozvoljeno Merodavnim pravom u vezi sa bilo kojim pravnim pitanjem koje se postavi u arbitražnom postupku ili u vezi sa bilo kojom odlukom donetom u skladu sa ovim članom. |
| 17.7 The Parties agree that the arbitral award may be enforced against the Parties to the arbitration proceedings or their assets wherever they are located or may be found and that a judgement upon the arbitral award may be entered in any court having jurisdiction thereof. | 17.7 Ugovorne strane su saglasne da se arbitražna odluka može izvršiti na imovini Ugovorne strane bez obzira na mesto u kome se ista nalazi ili mesta gde se ista može naći, i da je takva arbitražna odluka izjednačena sa pravnosnažnom sudskom odlukom. |

**IN WITNESS WHEREOF, THE PARTIES HERETO HAVE CAUSED THIS AGREEMENT TO BE SIGNED BY THEIR AUTHORISED OFFICERS ON THE DATE FIRST WRITTEN ABOVE./POTPISANO OD STRANE OVLAŠĆENIH PREDSTAVNIKA UGOVORNIH STRANA NA DAN NAZNAČEN IZNAD.**

| | |
|---|---|
| Signed for and on behalf of/ Potpisuje u ime i za | Signed for and on behalf of/ Potpisuje u ime i za |
| **THE SERVICE PROVIDER/PRUŽAOCA USLUGA** | **THE BIDDER/PONUĐAČA** |
| Authorised signatory/ Potpis ovlašćenog lica | Authorised signatory/ Potpis ovlašćenog lica |
| Signed for and on behalf of/ Potpisuje u ime i za | Signed for and on behalf of/ Potpisuje u ime i za |
| **THE REPUBLIC OF SERBIA/REPUBLIKU SRBIJU** | **THE COMPANY/DRUŠTVO** |
| Authorised signatory/ Potpis ovlašćenog lica | Authorised signatory/ Potpis ovlašćenog lica |